Denisse O. Gastélum, SBN 282771
Selene Estrada-Villela, SBN 354994
**GASTÉLUM LAW, APC**
**A PROFESSIONAL CORPORATION**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112
Fax: (213) 402-8622
Email: dgastelum@gastelumfirm.com
       sestradavillela@gastelumfirm.com

Christian Contreras, SBN 330269
**THE LAW OFFICES OF**
**CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000
Fax: (323) 597-0101
Email: CC@Contreras-Law.com

Attorneys for Plaintiffs,
ESTATE OF RUBEN GUZMAN, by and through successor in interest, Ruben Guzman, Sr.; RUBEN GUZMAN, SR., individually

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF RUBEN GUZMAN, by and through successor in interest, Ruben Guzman, Sr.; RUBEN GUZMAN, SR., individually,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF RIVERSIDE, a public entity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT; SHERIFF CHAD BIANCO, in his individual and official capacities; EDWARD DELGADO; JAMES KRACHMER; MARTIN TOCHTROP; and DOES 1 through 10, individually, jointly and severally,<br><br>Defendants. | **CASE NO. 5:24-cv-01199**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Failure to Protect from Harm, Fourteenth Amendment Violation (42 U.S.C. § 1983);<br>2. Failure to Provide Medical Care, Fourteenth Amendment Violation (42 U.S.C. § 1983);<br>3. Deprivation of the Right to Familial Relationship with Decedent (42 U.S.C. § 1983);<br>4. Policies, Customs, Practices Causing Constitutional Violations (*Monell*, 42 U.S.C. § 1983);<br>5. Supervisory Liability Causing Constitutional Violations (Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983);<br>6. Negligence – Wrongful Death;<br>7. Negligence – Medical Malpractice;<br>8. Violation of California Government Code §845.6;<br>9. Violation of California Civil Code §52.1 (Tom Bane Act);<br>10. Intentional Infliction of Emotional Distress;<br>11. Declaratory Relief (28 U.S.C. § 2201)<br>12. Battery<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## **COMPLAINT FOR DAMAGES**

**COME NOW** Plaintiffs ESTATE OF RUBEN GUZMAN, by and through successor in interest, Ruben Guzman, Sr.; RUBEN GUZMAN, SR., individually, and allege as follows:

## **I.**

## **INTRODUCTION**

1.      This civil rights action seeks to establish the true and unequivocal facts surrounding the May 26, 2023, in-custody death of pretrial detainee Ruben Guzman, a 41-year-old inmate, who died following an undisclosed incident(s), at the Robert Presley Detention Center and the John Benoit Detention Center. This action also seeks to bring to public light the deliberate disregard for safety and protection carried out by the individual defendants in the present action.

2.      Upon information and belief, Mr. Guzman received **numerous** threats to his life by inmates and custody staff at the RCSD County Jails during his very few weeks there. By reason of Mr. Guzman's charges, the RCSD staff had a duty to ensure that Mr. Guzman was classified properly, and thus, protected within the COUNTY facilities. As a consequence of failing to ensure such protocols were taken, during the short time he spent in jail, Mr. Guzman feared for his life.

3.      At the time of his death, Ruben Guzman feared for his life due to the charges he faced, leaving him vulnerable and positioned him as prey to violent inmates as well as custody staff. Upon information and belief, On May 22, 2023, Ruben Guzman was "found unresponsive" in a holding cell at the John Benoit Detention Center, with "global swelling of the head." He was then transferred to an intensive care unit at JFK Hospital where he remained on a ventilator until his death on May 26, 2023.

4.      In just the year prior to this incident, 2022, eighteen (18) individuals died while incarcerated at the Riverside County Jails, the highest number for the County in the last fifteen (15) years.  In response to these alarming numbers, the

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

California Department of Justice launched an investigation into the Riverside County Sheriff's Department's unconstitutional patterns and practices resulting in the record-breaking in-custody deaths.  The raw data and the per capita data make clear that the Riverside County Jails are a death sentence for any pretrial detainee.

5.      Long before Ruben Guzman's death, each of the individually named defendants from the County of Riverside and the Riverside County Sheriff's Department knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the Riverside County correctional facilities, including John J. Benoit Detention Center, Cois M. Byrd Detention Center, Robert Presley Detention Center, Larry D. Smith Correctional Facility, and the Blythe Jail.

6.      Long before the death of Ruben Guzman, the RCSD personnel knew that there existed at the John Benoit Detention Center, a great indifference to the safety and protection of inmates, particularly those with specific charges, as well as the mentally ill, and other vulnerable inmates. This indifference consisted of a total disregard by the RCSD personnel for vulnerable inmates who were susceptible to being preyed upon by violent predatory inmates, and potentially other violent custody staff.

7.      The individuals named in the present lawsuit were repeatedly put on notice of the great dangers which existed within the Riverside County correctional facilities through the long history of in-custody deaths; the inmate-on-inmate violence which permeated the jails; the record-breaking amount of fentanyl overdoses throughout all Riverside County correctional facilities; the federal class action *Quinton Gray, et al. v. County of Riverside,* case number 13-0444 VAP (OPx) (C.D. Cal.) (hereinafter the "*Gray* Class Action") targeting the Riverside County Sheriff's Department custody and medical staff's deliberate indifference to the safety and protection of inmates; the warnings from neutrally-selected experts regarding the Riverside County Sheriff's Department's custody and medical staff's failures

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

amounting to constitutional violations; a court ordered Consent Decree directing the Riverside County Sheriff's Department to implement a Remedial Plan to meet the minimum level of health care necessary to fulfill the Riverside County Sheriff's Department's obligations under the Eighth and Fourteenth Amendments; and through a voluntarily entered Settlement Agreement which required that the Riverside County Sheriff's Department remedy all of the deficiencies addressed in the *Gray* class action.

8.      Despite this long history of complete disregard to inmate safety and protection, and history of inmate-on-inmate violence, each of the individually named defendants in this lawsuit deliberately failed to take even modest actions to prevent predatory behavior amongst inmates at the Riverside County correctional facilities. Thus, by the time Ruben Guzman was taken into custody and placed at the John Benoit Detention Center, the jail was infested with endemic, ongoing and unabated risks of injury or death to inmates – risks which indeed resulted in Ruben Guzman's death on May 26, 2023.  This is due to the fact that violent inmates incarcerated at the Riverside County correctional facilities knew that they could continue to prey on the most vulnerable with no interference on part of the custodial staff or the medical/mental health staff.

## II.

## JURISDICTION AND VENUE

9.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

10.      This Court has the authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57, including pursuant to the Court's inherent equitable powers.

11.     Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiffs' claims occurred within this district.

### III.
### PENDANT CLAIMS

12.     Plaintiffs have complied with the California Tort Claims Act requirements with respect to their claims arising under state law.

13.     With respect to these supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims as they arise from the same facts and circumstances which underlie the federal claims.

### IV.
### PARTIES

**A. Plaintiffs**

14.     Decedent Ruben Guzman was 41 years old. At the time of his death, he was a pretrial detainee who resided in the County of Riverside, California. The claims made by Plaintiff ESTATE OF RUBEN GUZMAN, are brought by the successor in interest, Ruben Guzman Sr.

15.     Plaintiff RUBEN GUZMAN, SR. is and was, at all times relevant hereto, the natural father of decedent Ruben Guzman. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings his claims individually and on behalf of decedent Ruben Guzman on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law. Plaintiff also brings these claims as a Private Attorney General, to vindicate not only his rights, but others' civil rights of great importance.

///

///

**B. Defendants**

16.     Defendant COUNTY OF RIVERSIDE (hereinafter also "COUNTY") owns, operates, manages, directs and controls Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT (hereinafter also "RCSD"), also a separate public entity, which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including RCSD employees and the Correctional Health Services (hereinafter also "CHS") employees, complied with the laws and the Constitutions of the United States and of the State of California.  Defendant COUNTY, through RCSD and CHS, is and was responsible for ensuring the protection and safety of all persons incarcerated at the RCSD correctional facilities, including the John J. Benoit Detention Center (hereinafter "JBDC"), Cois M. Byrd Detention Center (hereinafter "CBDC"), Robert Presley Detention Center (hereinafter "RBDC"), Larry D. Smith Correctional Facility (hereinafter "LSCF"), and the Blythe Jail (hereinafter collectively "COUNTY Jails").

17.     Defendant CHAD BIANCO ("SHERIFF BIANCO"), at all times mentioned herein, is and, since November 6, 2018, has been the Sheriff-Coroner of Defendant COUNTY OF RIVERSIDE, the highest position in the COUNTY Jails. As Sheriff, Defendant BIANCO is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all COUNTY Jails' employees and/or agents. Defendant SHERIFF BIANCO is and was charged by law with oversight and administration of the COUNTY Jails, including ensuring the safety of the inmates housed therein. Defendant SHERIFF BIANCO also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the COUNTY Jails alleged herein were committed. Defendant SHERIFF BIANCO is being sued in his individual and official capacities.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

18.     Defendant EDWARD DELGADO ("DELGADO"), at all times mentioned herein, was employed by Defendant COUNTY as the Corrections Assistant Chief of the COUNTY Jails, including the JBDC, for the COUNTY, and he was acting within the course and scope of that employment. In that capacity, Defendant DELGADO was a policy making official for the COUNTY OF RIVERSIDE. During the relevant time period, Defendant DELGADO was responsible for the general management and control of the COUNTY Corrections Operations, with primary authority and responsibility for the operations, staff assignments, program development, personnel supervision and training, maintenance and auxiliary inmate services at the jail, subordinate only to the Sheriff and/or Undersheriff. Defendant DELGADO is being sued in his individual capacity.

19.     Defendant JAMES KRACHMER ("KRACHMER"), at all times mentioned herein, was employed by Defendant COUNTY as the Corrections Chief Deputy of the COUNTY Jails, including the JBDC, for the COUNTY, and he was acting within the course and scope of that employment. In that capacity, Defendant KRACHMER was a policy making official for the COUNTY OF RIVERSIDE. During the relevant time period, Defendant KRACHMER was responsible for the general management and control of the COUNTY Corrections Operations, with primary authority and responsibility for the operations, staff assignments, program development, personnel supervision and training, maintenance and auxiliary inmate services at the jail, subordinate to the Corrections Assistant Chief, Defendant EDWARD DELGADO. Defendant KRACHMER is being sued in his individual capacity.

20.     Defendant MARTIN TOCHTROP (hereinafter also "TOCHTROP") is and was at all times relevant herein the Corrections Captain at JBDC, one of the highest-level supervisory positions. During the relevant time period, Defendant TOCHTROP was the Corrections Captain at JBDC, and was primarily responsible for assisting the Sheriff-Coroner with oversight and administration of the JBDC,

1   including ensuring the safety of the inmates housed therein. As Corrections Captain,

2   Defendant TOCHTROP was responsible for supervision of RCSD and CHC

3   employees and/or agents at the JBDC, and for the promulgation of the policies and

4   procedures and allowance of the practices/customs pursuant to which the acts of the

5   RCSD and CHC's employees alleged herein were committed. Defendant

6   TOCHTROP also directly supervised Defendant DOES 9 and 10. Defendant

7   TOCHTROP is being sued in his individual capacity.

8       21.     Defendants COUNTY OF RIVERSIDE, RIVERSIDE COUNTY

9   SHERIFF'S DEPARTMENT, SHERIFF BIANCO, DELGADO, KRACHMER and

10   TOCHTROP will hereinafter be referred to as the COUNTY DEFENDANTS.

11      22.     Plaintiffs are ignorant of the true names and capacities of Defendants

12   DOES 1 through 10 ("DOE Defendants") and therefore sue these Defendants by such

13   fictitious names. Plaintiffs are informed and believe and thereon allege that each

14   Defendant so named is responsible in some manner for the injuries and damages

15   sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state

16   the names and capacities of each DOE Defendant when they have been ascertained.

17      23.     The identities, capacities, and/or nature of involvement of the defendants

18   sued as DOES 1 through 10 are presently unknown to the Plaintiffs who therefore sue

19   these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon

20   allege that DOES 1 through 10 include individual law enforcement personnel and

21   medical personnel employed by the RCSD and the COUNTY Correctional Health

22   Services, and that they were involved in some manner and are legally responsible for

23   the wrongful acts and conduct alleged herein. Plaintiffs will amend this complaint to

24   substitute the DOE Defendants' true names and capacities when they have been

25   ascertained. Plaintiffs are informed, believe, and thereupon allege that each DOE

26   defendant is a resident of California. On information and belief, DOES 1 through10

27   were and still are residents of the County of Riverside, California. DOES 1 through 10

28   are sued in both their individual and official capacities.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

24.     Defendants DOES 1 through 10, at all times relevant hereto, were RCSD custody personnel, CHC personnel, deputies, sergeants, lieutenants, and/or captains of the RCSD, and at all times herein were acting under the color of law.  Said defendants were assigned to work at the COUNTY Jails and were responsible for carrying out RCSD and CHC policies and procedures and for ensuring the safety of inmates at the COUNTY Jails.  Said defendants were assigned to work as the custodial and medical/mental health staff for the COUNTY Jails, including the JBDC, on May 22, 2023; were responsible for the proper housing and classification of JBDC inmates, including decedent Ruben Guzman and other JBDC inmates,  and were responsible for the safety of inmates housed at the COUNTY Jails and the JBDC, the periodic cell checks of JBDC inmates, the supervision of JBDC inmates, the prevention of access to intoxicants by JBDC inmates,  the provision of mental health care services to JBDC inmates, and, in general, the protection of JBDC inmates, including decedent Ruben Guzman, as well as the promulgation of the policies, procedures, and allowance of the practices and customs, pursuant to which the acts of the employees of JBDC, alleged herein, were committed. Said defendants also contributed to the environment wherein decedent Ruben Guzman, upon information and belief, received numerous threats to his safety, which caused him to fear for his life. Defendants failed to prevent against these effects or stop these threats from becoming opportunities for violence. Said defendants are being sued in their individual capacities.

25.     At all relevant times, DOES 7 and 8 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY Correctional Health Services. At the time of the incident, DOES 7 and 8 were acting under color of law within the course and scope of their duties as employees for the COUNTY Correctional Health Services. They had supervisorial authority over DOES 1-10, and the COUNTY Correctional Health Services employees at the COUNTY Jails. DOES 7 and 8 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

26.     At all relevant times, DOES 9 and 10 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 9 and 10 were acting under color of law within the course and scope of their duties as employees for the RCSD and/or the COUNTY. They had supervisorial authority over DOES 1-10, and the employees of the RCSD. DOES 9 and 10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

27.     Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein Defendants SHERIFF BIANCO, DELGADO, KRACHMER and TOCHTROP and DOES 1 through 10, inclusive, were employees, agents and/or servants of the COUNTY, acted within the course and scope of said employment, agency and/or service, and possessed the power and authority and were charged by law with the responsibility to enact policies and to prescribe rules and practices concerning the operation of the COUNTY Jails, including the JBDC, and concerning the means by which the life and safety of arrestees and detainees were to be secured, what criteria were to be used for placing arrestees and detainees together in custody, what methods of placement of an arrestee or detainee in a jail cell were appropriate to safeguard the life and safety of the arrestee or detainee, the manner in which threats to the life and safety of an arrestee or detainee were to be evaluated and acted upon, what safeguards were to be in place to prevent inmates, arrestees or detainees who posed a threat to others in the facility from being permitted physical access to those others, what actions were to be taken when an arrestee or detainee is attacked or injured while incarcerated within the COUNTY Jails, and what methods of surveillance were to be used within each detention facility to insure immediate response to and prevention of incidents of violence occurring within jail cells.

28.     Each of the defendants, including the DOE defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by, among other things, personally participating in the unlawful conduct, acting jointly,

or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

29.     Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' and decedent Ruben Guzman's constitutional rights and other harm.

30.     Plaintiffs are informed, believe, and thereupon allege that, at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

31.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

32.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

///

///

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1

**V.**

2

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

3      33.      Upon information gathered from the Riverside County Sheriff's

4  Department, Coroner's Investigative Narrative, the following events led to the tragic

5  death of Mr. Guzman:

6      34.      On April 27, 2023, Mr. Guzman was arrested and booked into the Robert

7  Presley Detention Center for criminal charges which necessitated protective custody

8  to ensure Mr. Guzman's safety from other inmates and custody staff who wrongfully

9  adhered to "jail politics."

10     35.      On May 22, 2023, Ruben was transferred to the JBDC for a mental

11 health interview, where he was seen by a court appointed psychologist for

12 competency. He was then placed into a holding cell by himself.

13     36.      At 3:33pm, Mr. Guzman is "found unresponsive," and observed lying

14 face down, on the floor next to the toilet in his cell. A Correctional Sergeant,

15 Defendant DOE 1, was "in the area" and requested that Mr. Guzman's door be

16 opened. DOES 1-10 noted that Mr. Guzman had a faint pulse and shallow breathing.

17 Finally, medical aid was requested.

18     37.      Soon after, DOES 1-10 administered multiple doses of Narcan. DOES 1-

19 10 then arrived and preformed life-saving measures, which included AED device

20 placement and compressions. Mr. Guzman was unresponsive. Mr. Guzman was then

21 given two additional doses of Narcan.

22     38.      As per the surveillance video[1], Mr. Guzman was then given more

23 Epinephrine and another dose of Narcan before being transported to JFK Memorial

24 Hospital. After hours of struggling to sustain enough support to breathe on his own,

25 _____

26 [1] Surveillance videos serve as recording equipment that is critical to ensuring the welfare of
inmates housed in jails. Yet, the RCSD custody staff failed to notice this alarming behavior that was
easily observable had anyone been watching the surveillance video. The RCSD custody personnel

27 charged with monitoring the housing module where Mr. Guzman was housed ignored their duties.
Upon information and belief, the RCSD custody personnel charged with those duties deliberately

28 chose to ignore the footage from that surveillance camera.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

Mr. Guzman was admitted to the intensive care unit. There, the plan of care included sedation with Fentanyl and Midazolam infusion to provide him comfort.

39.   A CT scan revealed that Mr. Guzman experienced "global swelling in the head." Mr. Guzman was then placed on life support, with his vital signs declining. Mr. Guzman was taken off life support and was pronounced dead at 9:56pm on May 26, 2023.

40.   Upon information and belief, the beating and asphyxiation of Mr. Guzman led to his death. Indeed, Mr. Guzman's body not only indicated asphyxiation, but also a brutal and ongoing assault:

**EVIDENCE OF INJURY:**

**I.   RESTRAINT ASPHYXIATION AND MULTIPLE BLUNT FORCE TRAUMA:**

A.   STATUS POST MECHANICAL-POSITIONAL ASPHYXIATION ASSOCIATED WITH:

(i)   Extensive petechial hemorrhages of the frontal subgaleal region (14.0 x 12.0 cm).

(ii)   Extensive galeal contusion with acute hemorrhage involving the right frontal scalp region (10.0 x 12.0 cm).

(iii)   Small galeal contusion with acute hemorrhage involving the right temporal-occipital scalp region (4.0 x 4.0 cm).

(iv)   Extensive contusion of the right upper back, right midback and right lower back (25.0 x 18.0 cm).

*Confidential*                    *6/16/2023*                    *Provisional 1*

NAME:   **GUZMAN, RUBEN OCHOA**                    ACCESSION NO.:   **MLA23-00008**

(v)   Extensive contusion with acute hemorrhage of the back of the left upper arm and back of the left shoulder (8.0 x 12.0 cm).

(vi)   Extensive contusion with acute hemorrhage of the right posterior chest wall involving the intercostal muscles and the parietal pleura of the apex of the right chest cavity (10.0 x 12.0 cm).

(vii)   Extensive contusion with acute hemorrhage of the left posterior chest wall involving the intercostal muscles and the parietal pleura of the left chest cavity (25.0 x 12.0 cm).

(viii)   Extensive acute hyperemia of the larynx, trachea, and bronchi with copious bloody frothy fluid in the upper airway.

(ix)   Extensive contusions with parenchymal hemorrhages of the right and left lungs with bilateral acute hemorrhagic pulmonary edema and congestion of right and left lungs.

(x)   Focal hemorrhagic contusions of the SA Node and the AV Node (1.5 x 4.0 cm and 0.5 x 1.0 cm, respectively).

(xi)   Acute congestive brain swelling, global, with diffuse acute cerebral parenchymal edema.

(xii)   Extensive acute segmental hemorrhagic necrosis of the stomach, and the small and large intestines, as well as, the abdominal mesentery with marked cyanosis.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

41.   Upon information and belief, Mr. Guzman had received numerous threats to his life by inmates and custody staff at the RCSD County Jails. In only three weeks after being incarcerated, these threats manifested into Mr. Guzman being "found" face down in his cell, with various injuries as indicated above. Upon information and belief, the brutal and violent assault of Mr. Guzman was a coordinated effort by both RCSD inmates and custodial staff.[2]

42.   The aforementioned facts where indeed presented to SHERIFF BIANCO during the Coroner's Review which was held on May 30, 2023:

Detention Center. On 05/22/2023, Guzman was transferred to the John Benoit Detention Center for a mental health interview, and he was placed in a holding cell by himself. At 1533 hours, correctional staff were distributing meals and observed Guzman laying face-down, on the floor next to the toilet. A Correctional Sergeant was in the area and requested the cell door be open. The Correctional Sergeant checked for a pulse and a faint pulse was felt and Guzman was noted to have shallow breathing. Medical aid was requested. Multiple doses of Narcan medication were administered by correctional staff, at 1533 hours, 1534 hours, and 1536 hours. Correctional medical staff arrived at 1536 hours, and began life-saving measures to include AED (Automated External Defibrillator) device placement and compressions, as Guzman was unresponsive. Two additional doses of Narcan medication were administered at 1538 hours, and 1543 hours. Paramedics from Cal-Fire and American Medical Response arrived at 1547 hours, and assumed care. At 1553 hours, Epinephrine medication was administered along with an additional dose of Narcan medication. At 1604 hours, paramedics transported Guzman to John F. Kennedy Memorial Hospital. He arrived to the hospital at 1610 hours. At 1630 hours, it was reported Guzman had a "good blood pressure reading" but was unable to breathe on his own.

On 05/23/2023, at 0620 hours, it was reported Guzman had a urine drug screen that had a negative test result. A Computerized Tomography (CT) scan showed "global swelling in the head." At this time, Guzman remained on life support, as his vital signs were declining. Investigator Layos stated hospital staff were attempting to make contact with family to provide them with the details and advise of the poor prognosis.

43.   After the facts were presented, SHERIFF BIANCO certified the cause, manner and mode of death.

44.   Prior to decedent Ruben Guzman's death, Defendants DOES 1 through 10 had failed to properly classify Mr. Guzman. Said Defendants were aware of the risk of violence based on their experience with other inmates with similar charges being vulnerable as Mr. Guzman was. Said Defendants knew – or should have known – that Mr. Guzman would be attacked or otherwise seriously injured and/or killed by

---

[2] Mr. Guzman had feared for his life due to the various threats he received. Upon information and belief, this was because of his charges, which commonly led to violence in the County facilities, leaving those who commit these offenses vulnerable.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

other inmates if Ruben Guzman was not constantly monitored and housed in a high observation unit or other inmate housing which called for constant monitoring and isolation. Despite this, said defendants improperly and deliberately housed Mr. Guzman alone in a holding cell, knowing that this housing assignment would place decedent Ruben Guzman at great risk of serious bodily injury or death with a lack of monitoring and protection.

45.     As such, Defendants DOES 1 through 10 were all on notice, that decedent Ruben Guzman's placement in a holding cell put him in great risk of death or serious bodily injury at the hands of other inmates and custody staff. In view of Mr. Guzman's charges, and the other circumstances described above and elsewhere in this complaint, the holding cell was not an appropriate placement. Yet, with deliberate indifference and/or negligently, Defendants DOES 1 through 10 failed to ensure that Ruben Guzman's status be changed to status which accommodated an inmate who required specific classification. Said defendants, with deliberate indifference to the health, safety and welfare of Ruben Guzman, failed to properly classify Mr. Guzman as being an inmate who was high-risk and to transfer or house Mr. Guzman in a high observation unit or another housing assignment where Mr. Guzman would not be exposed to risks and threats from other inmates and custody staff.

46.     On May 22, 2023, Defendants DOES 1 through 5 were assigned as the floor deputies for JBDC housing module where decedent Ruben Guzman was being held. Defendants DOES 1 through 5 were responsible for conducting periodic cell checks, including inmate safety checks every 60 minutes, including the cell where Ruben Guzman was asphyxiated and experienced multiple cases of blunt force trauma. Defendants DOES 1 through 5 were responsible generally for protecting the inmates under their care from assault, including Ruben Guzman.

47.     Defendants COUNTY, RCSD, SHERIFF BIANCO, DELGADO, KRACHMER, TOCHTROP and DOES 1 through 10, which included RCSD

custodial and CHC medical/mental health staff of JBDC, with deliberate indifference, gross negligence, and reckless disregard to the safety, security, protection and constitutional and statutory rights of decedent Ruben Guzman and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies or practices of, among other things,

    a. Selecting, retaining and assigning deputies to their jails who exhibit deliberate indifference and reckless disregard for the safety, security and constitutional and statutory rights of detainees, arrestees and inmates who exhibit vulnerabilities due to their charges, and other positionalities;

    b. Subjecting persons in their jails to violence perpetrated by other detainees, arrestees or inmates;

    c. Failing to take adequate security measures to protect detainees, arrestees and inmates from unnecessary harm, including but not limited to, the following: separation of detainees and arrestees from potentially violent or dangerous inmates; use of security cameras to monitor violence within jail cells; training deputies to monitor detainees and inmates and immediately respond to acts of violence or threats of violence;

    d. Failing to adequately train, supervise, and control deputies in the arts of law enforcement;

    e. Failing to adequately discipline deputies involved in misconduct; and

    f. Condoning and encouraging deputies in the belief that they can violate the rights of persons such as the Plaintiffs in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

48.    Defendants COUNTY, RCSD, SHERIFF BIANCO, DELGADO, KRACHMER, TOCHTROP and DOES 1 through 10 acted with deliberate indifference and reckless disregard toward decedent Ruben Guzman's right to be

protected and safe while housed at JBDC, and afforded due process of law, by among other things, the following acts:

    a. Placing Ruben Guzman, a high-risk inmate, in a holding cell where Defendants knew or should have known inmates and others had accessibility to perform aggressive acts or acts of violence, and not watching and protecting him;

    b. Failing to properly classify and house Ruben Guzman in a high observation unit or otherwise house and classify Ruben Guzman in appropriate housing where he could be constantly monitored and/or isolated from other inmates;

    c. Causing Ruben Guzman to remain in the cell after Defendants knew that physical violence was imminent; and

    d. Not observing or protecting Ruben Guzman, or otherwise standing by and/or participating and allowing a brutal beating on Ruben Guzman by other inmates/custody staff to continue for an unreasonable period of time, resulting in death to Ruben Guzman

49.    Plaintiffs are informed and believe that Defendants DOES 1 through 10 were aware of the threat the other inmate(s) or custody staff represented to decedent Ruben Guzman based on the exhibited violent tendencies of which the deputies and other employees knew or should have known. Said defendants intentionally, recklessly and with deliberate indifference, failed to take any security measures to protect detainees and arrestees who were unable to defend themselves - such as Ruben Guzman, who was unable to care for himself from others in the RCSD facilities with violent tendencies.

50.    Plaintiffs are informed and believe, and on the basis of such information and belief alleges, that Defendants COUNTY and RCSD ordered, authorized, acquiesced in, tolerated, or permitted other defendants herein to engage in the unlawful and unconstitutional actions, policies, practices, and customs set forth in the

preceding paragraphs. Defendants' conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by defendants or on defendants' deliberate indifference, gross negligence, or reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiffs.

51.     Plaintiffs are informed and believe that the brutal beating was perpetrated by one or more inmates at the jail acting with the approval of RCSD custody personnel and CHC medical personnel, or because of the deliberate indifference, gross negligence or reckless disregard of Defendants DOES 1 through 10 to the safety and security of decedent Ruben Guzman.

52.     Plaintiffs are informed and believe that Defendants DOES 1 through 10 recklessly and with deliberate indifference, failed to immediately and appropriately respond to the brutal attack and allowed the attack to continue for an extended period of time, causing the death of Ruben Guzman.

53.     Plaintiffs are informed and believe that RCSD custody personnel and CHC medical personnel, intentionally, recklessly and with deliberate indifference, failed to take immediate action to summon medical care for Ruben Guzman; despite knowing he was in need of immediate medical care.

54.     Defendants have been on notice for years that their provision of medical and mental health treatment to inmates is inadequate and results in needless harm and death.

55.     Welfare and safety checks by custody and mental health staff, when done correctly, are an important part of protecting inmates in the COUNTY Jails from harm, including inmate on inmate violence. Defendants knew that health and welfare checks conducted in units were part of violence prevention programs and that such checks were necessary for inmate-on-inmate attack prevention.

56.     Prior to the attack of Ruben Guzman on May 22, 2023, Defendants were aware that there was a problem with RCSD custody personnel and CHC medical personnel failing to actually perform required welfare and safety checks in the units

at the COUNTY Jails, including JBDC, failing to perform adequate welfare and safety checks and/or failing to take adequate measures after observing violent during the welfare and safety checks.

57.    Defendants' actions and omissions, as herein above recited, directly placed decedent Ruben Guzman at substantial risk of the grievous and tragic harm that ultimately occurred resulting in his death.

58.    Plaintiffs timely and properly filed tort claims with the County of Riverside pursuant to California Government Code sections 910, *et seq*., and this action is timely filed within all applicable statutes of limitation.

59.    This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

## VI.

## FACTUAL ALLEGATIONS COMMON TO *MONELL* AND SUPERVISORIAL CAUSES OF ACTION

60.    Based upon the principles established in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), Defendants are liable for all injuries sustained by Plaintiffs as set forth herein. To establish municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), a plaintiff must prove: (1) that [the plaintiff] possessed a constitutional right of which she was deprived; (2) that the municipality had a policy/custom/practice; (3) that this policy/custom/practice amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy/custom/practice is the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir, 2011). The policy/custom/practice "need only cause the constitutional violation; it need not be unconstitutional per se." *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994). Recognized paths to *Monell* liability include: (1) an unconstitutional custom, practice or policy behind the violation of rights; (2) a deliberately indifferent omission, such as a failure to train or failure to have a needed policy; and (3) a final policy-maker's

1   involvement in or ratification of the conduct underlying the violation of rights.

2   *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-1250 (9th Cir. 2010).

3   **A. The COUNTY Jails Experienced Their Deadliest Year in 2022.**

4   61.   In 2022, Defendant RIVERSIDE COUNTY SHERIFF'S

5   DEPARTMENT'S COUNTY Jails have resulted in eighteen (18) in-custody deaths.

6   Prior to 2022, Riverside County had not logged more than twelve (12) such deaths in

7   any year since 2005. [3]

8   62.   In the year prior to Ruben Guzman's death, there were eighteen (18) in-

9   custody deaths within the COUNTY Jails during the 2022 calendar year:

10       a.   Alicia Upton (Date of Loss: April 28, 2022; Manner of Death:

11            "Suicide")

12       b.   Abel Valencia Cruz (Date of Loss: May 1, 2022: Manner of Death:

13            "Natural")

14       c.   Justin Kail (Date of Loss: May 17, 2022; Manner of Death:

15            "Accident-Overdose")

16       d.   Brawn Lamar Hampton (Date of Loss: May 26, 2022; Manner of Death:

17            "Natural")

18       e.   Michael Vasquez (Date of Loss: May 26, 2022; Manner of Death:

19            "Accident-Overdose")[4]

20       f.   Yareth Villagomez (Date of Loss: June 20, 2022; Manner of Death:

21            "Accident-Overdose")

22       g.   Richard Edward Biscotti (Date of Loss: July 11, 2022; Manner of Death:

23            "Natural")

24   _____

25   [3] *See* State of California Department of Justice Press Release: "Attorney General Bonta Launches
     Civil Rights Investigation into Riverside County Sheriff's Office," February 23, 2023, available at

26   https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-
     riverside-county

27   [4] Pretrial detainee Michael Vasquez was just 20 years old at the time of his death.  He had been in
     the facility for only six days prior to being exposed to the dangers and risks permeating the CBDC,

28   all of which ultimately resulted in his death.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

h.  Richard Matus Jr. (Date of Loss: August 11, 2022; Manner of Death: "Accident-Overdose")

i.  Abel Anthony Chacon (Date of Loss: August 25, 2022; Manner of Death: "Accident-Overdose")

j.  Octavio Zazueta (Date of Loss: August 26, 2022; Manner of Death: "Accident-Overdose")

k.  Gary Roy Haneline (Date of Loss: August 27, 2022; Manner of Death: "Natural")

l.  Mario Solis (Date of Loss: April 28, 2022; Manner of Death: "Accident")[5]

m.  Kaushal Niroula (Date of Loss: September 6, 2022; Manner of Death: "Strangulation")[6]

n.  Robert Louis Robinson (Date of Loss: September 7, 2022; Manner of Death: "Suicide/Hanging")

o.  Ulyses Munoz Ayala (Date of Loss: September 29, 2022; Manner of Death: "Homicide Willful")[7]

---

[5] Notably, while the COUNTY DEFENDANTS have reported to the Department of Justice that pretrial detainee Mario Solis' death was an "accident," what is known through the Coroner's Investigative Narrative and Autopsy Report is that Mr. Solis was indeed in a safety cell (*i.e.*, cells intended for suicidal inmates) an ingested multiple foreign objects, including a pencil, toothbrush, and plastic bags with soap.  Mr. Solis ultimately died due to the pencil puncturing his right jugular vein. Upon information and belief, the COUNTY DEFENDANTS have attempted to classify this death as an "accident" in an effort to absolve themselves from liability arising from a *suicidal* pretrial detainee who is housed in a safety cell, but is nevertheless able to access such hazardous objects to commit suicide.  What is more is that Mr. Solis' family was not notified about his death until six (6) days had passed.

[6]  Decedent Kaushal Niroula was a transgender HIV-positive female inmate, who was brutally and repeatedly beaten and strangled by her cellmate, Ronald Sanchez—a convicted sex offender.  Ms. Niroula was killed just three days before trial. Upon information and belief, Ms. Niroula had been assisting state and federal authorities to help uncover the illegal wiretapping at the COUNTY Jails.

[7]  Pretrial detainee Ulyses Munoz Ayala was brutally killed by a *known* violent inmate, Erik Martinez, whom he was forced to share a cell with.  *See* "Corona Man Killed In Riverside County Jail Cell" (The Sun, September 30, 2022), available at https://www.sbsun.com/2022/09/30/corona-man-killed-in-riverside-county-jail-cell/

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

p.  Cynthia Heredia (Date of Loss: October 13, 2022; Manner of Death: "Pending")

q.  Katie Patton (Date of Loss: November 20, 2022 Manner of Death: "Pending")

r.  Ronald Cook (Date of Loss: December 12, 2022 Manner of Death: "Pending")

63.     The deaths include six (6) overdoses, two (2) homicides resulting from inmate-on-inmate violence, three (3) suicides, four (4) natural cause deaths, and three (3) pending.

64.     The Defendants' deliberate indifference towards protecting pretrial detainees from hazards resulted in illegal drugs permeating the COUNTY Jails. According to Defendant KRACHMER, from November 2021 through November 2022, the COUNTY Jails experienced 140 overdoses, with inmates overdosing at least twice a week within the COUNTY Jails.[8]

65.     The Defendants' deliberate indifference towards protecting pretrial detainees from hazards resulted in illegal drugs permeating the COUNTY Jails. According to Defendant KRACHMER, from November 2021 through November 2022, the COUNTY Jails experienced 140 overdoses, with inmates overdosing at least twice a week within the COUNTY Jails.[9]

66.     The Defendants' deliberate indifference towards pretrial detainees suffering from mental health issues resulted in several completed and attempted suicides.  On November 23, 2022, pretrial detainee Charles Wall attempted suicide by

---

[8] *See* "Families Question Suspected Fentanyl Deaths of Loved Ones Behind Bars; Riverside Co. Sheriff Reacts" (Fox11 News, November 7, 2022), available at https://www.foxla.com/news/fentanyl-responsible-for-a-third-of-riverside-county-jail-deaths-in-2022-families-demand-answers

[9] *See* "Families Question Suspected Fentanyl Deaths of Loved Ones Behind Bars; Riverside Co. Sheriff Reacts" (Fox11 News, November 7, 2022), available at https://www.foxla.com/news/fentanyl-responsible-for-a-third-of-riverside-county-jail-deaths-in-2022-families-demand-answers

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

jumping off the top tier of his housing module at RPDC.  From November 19, 2022, through November 23, 2022, Mr. Wall made repeated requests for psychiatric care and medication.  Mr. Wall suffered from schizophrenia and suicidal ideations, which was known to the COUNTY custody and medical staff given his prior attempts to commit suicide at RPDC in 2015, as well as his extensive medical and mental health history.  These requests were ignored by the custody and medical staff. On November 23, 2022, Mr. Wall pled with a custody staffer, begging for an opportunity to speak with a psychiatrist.  The custody staffer demanded to know why Mr. Wall needed to speak with a psychiatrist.  When Mr. Wall hesitated, the custody staffer shouted, "Do what you gotta do! Stop pushing my fucking buttons or you're gonna give me a reason to come in!" Shortly thereafter, Mr. Wall attempted suicide by jumping off the second story of his housing module.

**B. The COUNTY Jails Are On Track to Surpass the Number of In-Custody Deaths in 2023.**

67.     In 2023, the County of Riverside had reached record breaking in-custody deaths at the RCSD County Jails.  Ruben Guzman is included in these record breaking in-custody deaths.

68.     As of November of 2023, the Riverside County Sheriff's Department has already claimed the lives of twenty-two (22) persons who died while in the custody of the County.  Ruben Guzman's death is one of the twenty-two (22) deaths accounted for. Of those in-custody deaths, twelve (12) deaths are related to conditions of confinement within the RCSD County Jails:

a. On January 12, 2023, pretrial detainee Mark Spratt died as a result of injuries he suffered during a brutal attack by his cellmate at CBDC.  Mr. Spratt was only 24 years old at the time of his death.

b. On February 5, 2023, pretrial detainee Christian Viramontes was found unresponsive in his cell at RPDC.  Upon information and belief, Mr. Viramontes' death was caused by hazards permeating the RPDC.  Mr.

Spratt was only 26 years old at the time of his death. An investigation into the manner and means of death remains pending.

c. On February 21, 2023, pretrial detainee Christian Drye died in-custody at a COUNTY hospital due to injuries suffered during an arrest. An investigation into the manner and means of death remains pending.

d. On March 11, 2023, pretrial detainee Asher Saunders was found unresponsive in his cell at CBDC. Upon information and belief, the death was caused by hazards permeating the CBDC. An investigation into the manner and means of death remains pending.

e. On May 23, 2023, 16-year-old Ciara Sanchez was transported from a RCSD Juvenile Facility to a local hospital where she eventually died. Upon information and belief, the death was caused by hazards permeating the RCSD Juvenile Facility. An investigation into the manner and means of death remains pending.

f. On May 26, 2023, Ruben Guzman, a 41-year-old pretrial detainee, died following an undisclosed incident at JBDC. Upon information and belief, Mr. Guzman received numerous threats to his life by inmates and custody staff at the COUNTY Jails. Upon information and belief, Mr. Guzman was found unresponsive in a holding cell on May 22, 2023 with "global swelling of the head." He died four days later on May 26, 2023.

g. On July 5, 2023, Astrid Johnson, a 62-year-old woman pretrial detainee housed in the JBDC, died in-custody. Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Ms. Johnson with adequate medical care. An investigation into the manner and means of death remains pending.

h. On August 14, 2023, Steven Crawford, a 71-year-old pretrial detainee, was found unresponsive in his cell at JBDC. Upon information and

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

belief, the death was caused by hazards permeating the JBDC.  An investigation into the manner and means of death remains pending.

i.  On August 27, 2023, Tavea Starks-Walker, a 31-year-old pretrial detainee, was found unresponsive in his cell at LSCF.  Upon information and belief, the death was caused by hazards permeating the LSCF.  An investigation into the manner and means of death remains pending.

j.  On September 14, 2023, Damon Beitz, a 46-year-old pretrial detainee, was found unresponsive in a holding cell at RPDC.  Mr. Beitz had been arrested by RCSD deputies just hours before being found unresponsive in his cell.  Upon information and belief, the death was caused by injuries Mr. Beitz suffered during the arrest. An investigation into the manner and means of death remains pending.

k.  On September 18, 2023, Jess Flores, a 46-year-old pretrial detainee, was found unresponsive in his cell at CBDC.  Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Mr. Flores with adequate medical care.  An investigation into the manner and means of death remains pending.

l.  On November 4, 2023, Charles Giurbino, a 58-year-old pretrial detainee, was found unresponsive in his cell at LDCF.  Upon information and belief, the death was caused by hazards permeating the LSCF.  An investigation into the manner and means of death remains pending.

69.  The Defendants' deliberate indifference towards protecting pretrial detainees from violence has resulted in numerous deaths and assaults at the COUNTY Jails. Upon information and belief, this indifference has resulted in the 2022-2023 deaths of Kaushal Niroula, Ulyses Munoz Ayala, Mark Spratt, and Ruben Guzman, and the brutal sexual assault of a pretrial detainee in April of 2023 at the COUNTY Jails.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

**C. RCSD Refuses to Comply with California Department Justice Mandates Regarding In-Custody Death Reporting Abating Transparency and Accountability.**

70.     Despite the record-breaking in-custody deaths at the COUNTY Jails, and the suspicious circumstances surrounding the in-custody deaths, the COUNTY DEFENDANTS have refused to adhere to state mandates and regulations which were explicitly created to ensure accountability and transparency, including California Government Code section 12525[10] and Title 15 Minimum Standards for Local Detention Facilities, section 1046 Death in Custody.[11]

71.     The COUNTY DEFENDANTS have refused to comply with these mandates which were enacted to provide transparency and accountability when inmates and prisoners die in-custody within California correctional facilities.

72.     The COUNTY DEFENDANTS reported some of the in-custody deaths six weeks after they occurred, despite the 10-day mandate.[12]

73.     The COUNTY DEFENDANTS provided inaccurate information to the Department of Justice, classifying the pretrial detainees, who had died in their custody as "sentenced" post-convicted prisoners.[13] Upon information and belief, this orchestrated misclassification of the pretrial status of the decedents was done

---

[10] *See* Cal. Gov. Code § 12525 ("In any case in which a person dies while in the custody of any law enforcement agency or while in custody in a local or state correctional facility in this state, the law enforcement agency or the agency in charge of the correctional facility shall report in writing to the Attorney General/DOJ, within 10 days after the death, all facts in the possession of the law enforcement agency or agency in charge of the correctional facility concerning the death.")

[11] *See* Title 15 Minimum Standards for Local Detention Facilities, Section 1046 Death ("The facility administrator, in cooperation with the health administrator, shall develop written policy and procedures to ensure that there is an initial review of every in-custody death within 30 days. The review team shall include the facility administrator and/or the facility manager, the health administrator, the responsible physician and other health care and supervision staff who are relevant to the incident.")

[12] *See* "Riverside Sheriff Failed to Report Inmate Deaths to State On time; Names of Dead Made Public" (Desert Sun, September 16, 2022), available at https://www.desertsun.com/story/news/crime_courts/2022/09/16/riverside-county-sheriffs-failed-report-inmate-deaths-state-time/8017820001/

[13] *Id.*

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

purposely by the COUNTY DEFENDANTS so as to impose the Eighth Amendment higher degree of culpability standard, rather than the less stringent Fourteenth Amendment degree of culpability.[14]

### D. California Department of Justice Launches Patterns and Practices Investigation into Recording Breaking In-Custody Deaths at the COUNTY Jails.

74.     On February 23, 2023, the California Department of Justice (DOJ) announced its decision to launch a formal investigation into Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT's unconstitutional patterns and practices resulting in record-breaking in-custody deaths at the COUNTY Jails and the use of excessive force by sheriff's deputies, disproportionately affecting Latino and African American communities.[15] The raw data and the per capita data make clear that the COUNTY Jails are a death sentence for any pretrial detainee, some of whom have died just days after being booked.[16]  For reference, San Diego County had 19 in-

---

[14] Pretrial detainees are perceived as innocent under the eyes of the law.  Because they are mere detainees who are simply awaiting their day in court, the Constitution mandates that additional protective measures be put in place to ensure that the detainees are not harmed while in the government's custody.  More specifically, the 14th Amendment requires that correctional facilities not be deliberately indifferent towards the detainees' safety and protection.  *See Gordon v. County of Orange,* 888 F.3d 1118 (9th Cir. 2018). Once an inmate has been formally convicted of a crime, they are deemed to be a post-conviction prisoner.  While the Constitution too protects post-conviction prisoners, the 8th Amendment merely requires that the prisoners not be subjected to cruel and unusual punishment while in the government's custody. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).  The end result is that the legal standard under which a civil rights lawsuit is premised upon is much higher and more difficult to prove for a post-conviction prisoner (*i.e.*, subjective standard) rather than a pretrial detainee (*i.e.,* objective standard).  Upon information and belief, the COUNTY DEFENDANTS purposely classified the pretrial detainees as inmates who had already been "sentenced" in an effort to make it merely impossible for the families to establish liability because of the heightened standard of culpability imposed on civil rights cases filed by post-conviction prisoners.

[15] *See* State of California Department of Justice Press Release: "Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office," February 23, 2023, available at https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

[16] *Id*.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  custody deaths in 2022, despite an average *daily* jail population of *500 more people*
2  *than* Riverside County.

3      75.    During the press conference, the California Attorney General Rob Bonta
4  expressed his grave concerns with regard to Defendant RIVERSIDE COUNTY
5  SHERIFF'S DEPARTMENT: "All Californians deserve fairness and respect from the
6  institutions that serve them […]. When some communities don't see or feel they are
7  being treated equitably by law enforcement, it contributes to distrust and hurts public
8  safety. Unfortunately, it is clear that — amid concerning levels of in-custody deaths
9  and allegations of misconduct — too many families and communities in Riverside
10 County are hurting and looking for answers. As part of my office's ongoing efforts to
11 support constitutional policing, the California Department of Justice is opening a civil
12 rights investigation into the Riverside County Sheriff's Office. Whether you have a
13 loved one in jail or are worried about crime in your neighborhood, we all benefit
14 when there is action to ensure the integrity of policing in our state."

15     76.    In response to the California Department of Justice's civil rights
16 investigation in the COUNTY Jails, SHERIFF BIANCO issued the following
17 offensive statement illustrating indifference towards the lives lost in his jails: "This
18 investigation is based on nothing but false, and misleading statements, and straight-
19 out lies from activists, including their attorneys. This will prove to be a complete
20 waste of time and resources."[17]

21 **E. RCSD's History of Indifference Towards Inmates Incarcerated at the**
22     **COUNTY Jails.**

23     77.    For well over a decade now, the COUNTY's own Grand Jury, as well as
24 several independent auditors, have come to the same conclusion: dangerous deficits

25
26

27 [17] *See* Riverside County Sheriff's Department YouTube video titled: "Sheriff Bianco's Response to
28 Frivolous Civil Rights Investigation by DOL" (February 23, 2023), available at
https://www.youtube.com/watch?v=6ttMVVLyfaQ

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

in health care services at the jails threaten the lives and health of the thousands of men and women they hold.

78.   The "2010-11 Grand Jury Report: Riverside County Detention Health Care Administration" found systemic failures in treatment, medication management, record-keeping, and administration of forced medications, among other areas. [18]

79.   The Grand Jury released an updated report in June 2012, noting that mental health staffing had in fact decreased since its prior year's report. [19]

80.   On March 8, 2023, the federal class action lawsuit *Quinton Gray, et al. v. County of Riverside,* case number 13-0444 VAP (OPx) (C.D. Cal.) was filed against Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT. The class action alleged that the COUNTY failed to provide minimally adequate medical and mental health care to the people incarcerated in its jails, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.  The class action also alleged discrimination against certain inmates with disabilities in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

81.   The *Gray* operative complaint (Dkt. 150) alleged the following unconstitutional patterns and practices permeating the COUNTY Jails:

   a.   RCSD, by policy and practice, maintains and runs a health care system that lacks basic elements necessary to provide constitutional care;

   b.   RCSD, by policy and practice, systematically fails to identify and diagnose serious conditions, to provide timely care, to administer appropriate medications, to employ adequate staff to meet inmates' basic needs, to maintain records that allow informed treatment decisions, to

---

[18] *See* 2010-2011 Grand Jury Report re: Detention Mental Health Services, available at https://rivco.org/sites/g/files/aldnop116/files/Past%20Reports%20%26%20Responses/2010-2011/11mentalhealth_detentionserv.pdf

[19] *See* 2011-2012 Grand Jury Report re: Detention Mental Health Services, available at https://rivco.org/sites/g/files/aldnop116/files/Past%20Reports%20%26%20Responses/2011-2012/12mentalhealthdetention.pdf

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

establish legally required confidentiality, and to identify and correct its own failings;

   c.  RCSD, by policy and practice, maintains and runs substandard medication management and administration;

   d.  RCSD, by policy and practice, is severely understaffed at the COUNTY Jails;

   e.  RCSD, by policy and practice, provides substandard medical care to inmates;

   f.  RCSD, by policy and practice, provides substandard mental health care to inmates;

82.    On September 2, 2014, the Court granted Plaintiffs' Motion for Class Certification.

83.    On February 20, 2015, the parties agreed to hire neutral experts to determine whether the health care provided at the COUNTY Jails posed a significant risk of serious harm to inmates confined in the COUNTY Jails and, if so, to make recommendations for improvements that will provide the minimum care guaranteed by the United States Constitution.

84.    On July 15, 2015, the neutrally-appointed experts issued reports, determining that the health care failed to meet the constitutional minimum.  As such, the parties agreed to negotiate a Remedial Plan to address the identified deficiencies in the expert reports.

85.    Due to the COUNTY DEFENDANTS' ongoing failures to comply with the Consent Decree, Plaintiffs in the *Gray* class action have had to seek emergency relief from the Court to ensure that the Consent Decree is enforced.

**F. The County Defendants' Indifference to the Constitutional Violations and Failures Permeating the COUNTY Jails Affecting Inmates with Mental Health Issues.**

86.    Defendants SHERIFF BIANCO the RCSD Corrections Supervisors

EDWARD DELGADO, JAMES KRACHMER, and MARTIN TOCHTROP through their supervision of the COUNTY's Correctional Health Services (hereinafter also "CHS") medical staff, were responsible for the provision of medical and mental health services at the COUNTY Jails, and as such, were responsible for the following at the COUNTY Jails:

    a.   Staffing for the jail's medical and mental health units;

    b.  Administrative structure, medical direction and operational oversight for the medical and mental health units;

    c.  Oversight of the day-to-day operations of the health services programs at the jail;

    d.  Design and implementation of a suicide prevention program, including the related policies and procedures to fully and safely carry out such program;

    e.  Development, implementation and revision policies and procedures which relate to the overall provision of mental health and medical services, including the operational aspects of such services and compliance with regulations and statutes;

    f.  Development, implementation and revision policies, procedures and practices for the training of custody, medical and mental health staff at the jail;

    g.  Identifying of all unsafe or unhealthy conditions within the jail facilities related to the provision of medical and mental health services, and proposing of corrective measures of such conditions in a timely manner;

    h.  Provide continuous training to detention staff regarding the screening of inmates, identification of mentally ill inmates, risk recognition, and suicide prevention.

87.   Defendants COUNTY, RCSD, SHERIFF BIANCO the RCSD Corrections Supervisors EDWARD DELGADO, JAMES KRACHMER, and

1  MARTIN TOCHTROP, and the COUNTY custody, medical and mental health staff,

2  and each of them, had been on notice for years that their provision of medical and

3  mental health treatment to inmates at the COUNTY Jails was inadequate and resulted

4  in needless harm and death.

5      88.     By the time that decedent Ruben Guzman was transferred to RPDC,

6  SHERIFF BIANCO the RCSD Corrections Supervisors EDWARD DELGADO,

7  JAMES KRACHMER, and MARTIN TOCHTROP, and the COUNTY custody,

8  medical and mental health staff, and each of them, understood the holding cell where

9  decedent Ruben Guzman was housed on May 22, 2023 was not suitable for an inmate

10  who was at high risk of violence and needed to be classified properly.

11      89.     Defendants COUNTY, RCSD, SHERIFF BIANCO the RCSD

12  Corrections Supervisors EDWARD DELGADO, JAMES KRACHMER, and

13  MARTIN TOCHTROP, and the COUNTY custody, medical and mental health staff,

14  and each of them, knew that placing decedent Ruben Guzman in such a jail cell

15  would pose a substantial risk of death. Prior to the death of decedent Ruben Guzman

16  other persons in the custody of the COUNTY and supervised and cared for by the

17  COUNTY medical and custody staff had been victims of violence by similar, if not

18  identical, means during their incarcerations at the COUNTY Jails.

19      90.     Defendants COUNTY, RCSD, SHERIFF BIANCO the RCSD

20  Corrections Supervisors EDWARD DELGADO, JAMES KRACHMER, and

21  MARTIN TOCHTROP, and the COUNTY custody, medical and mental health staff,

22  and each of them, were repeatedly put on notice of the great dangers which existed

23  within the COUNTY Jails through the long history of in-custody deaths; the record-

24  breaking amount of fentanyl overdoses throughout all COUNTY Jails; the federal

25  class action *Quinton Gray, et al. v. County of Riverside,* case number 13-0444 VAP

26  (OPx) (C.D. Cal.) targeting the COUNTY custody, medical and mental health staff's

27  deliberate indifference to the safety and protection of inmates; the warnings from

28  neutrally-selected experts regarding the COUNTY custody, medical and mental

health staff's failures amounting to constitutional violations; a court ordered Consent Decree directing the Riverside County Sheriff's Department to implement a Remedial Plan to meet the minimum level of health care necessary to fulfill the COUNTY's obligations under the Eighth and Fourteenth Amendments; and through a voluntarily entered Settlement Agreement which required that the COUNTY remedy all of the deficiencies addressed in the *Gray* class action.

91.     Based on the aforementioned, Defendants COUNTY, RCSD, SHERIFF BIANCO the RCSD Corrections Supervisors EDWARD DELGADO, JAMES KRACHMER, and MARTIN TOCHTROP, and the COUNTY custody, medical and mental health staff, and each of them, knew of the dangers that posed a risk to decedent Ruben Guzman's safety, yet disregarded these dangers resulting in his death.

**G. Sheriff Bianco's Indifference to the Constitutional Violations and Failures Permeating His COUNTY Jails.**

92.     A County Sheriff, like SHERIFF BIANCO "may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). This causal connection can exist either "by setting in motion a series of acts by others or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id*. at 1207–08. Ninth Circuit has long held that a supervisor "need not be 'directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury.'" *Id*. at 1205-06 (9th Cir. 2011), cert. den'd, 132 S. Ct. 2101 (2012) (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 645-46 (9th Cir. 1991)). "Rather, the supervisor's participation could include his 'own culpable action or inaction in the training, supervision, or control of his subordinates,' 'his acquiescence in the constitutional

deprivations of which the complaint is made,' or 'conduct that showed a reckless or callous indifference to the rights of others.'" *Id*. "We have never required a plaintiff to allege that a supervisor was physically present when the injury occurred." *Id*.

93. The endemic, ongoing and unabated risks of injury or death to inmates incarcerated in the COUNTY Jails are well established. SHERIFF BIANCO has long been aware of these risks and harms which have resulted in injury and death to inmates incarcerated in his COUNTY Jails.  SHERIFF BIANCO's failure to take action to ameliorate these conditions constitutes deliberate indifference to the safety and health of inmates incarcerated in his COUNTY Jails.

94. SHERIFF BIANCO has made several public statements all of which serve as illustrations of his great indifference towards the inmates, most of whom are pretrial detainees and innocent under the eyes of the law, who are in the government's custody in his COUNTY Jails.

95. Despite the alarming trends in overdoses and in-custody deaths, SHERIFF BIANCO blames the decedents and their families for the in-custody deaths and overdoses in the COUNTY Jails – all of which are fully controlled and managed by him.

96. On September 16, 2022, The Press-Enterprise posted the article "Sheriff Explains How 13 Riverside County Inmates Died This Year" on Facebook with the following caption: "Less than an hour after the family of a man who died in jail publicly complained about a lack of information on his death and that of 12 other Riverside County inmates this year, Sheriff Chad Bianco explained how they died." [20]

---

[20] *See* "Sheriff Explains How 13 Riverside County Inmates Died This Year" (The Press-Enterprise Facebook Page, September 16, 2022), available at:
https://www.facebook.com/page/50855317267/search/?q=chad%20bianco%2013%20riverside%20county%20inmates%20died

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

97.     Within fourteen hours of article being posted on Facebook, SHERIFF BIANCO went on to publicly shame and harass the families and their deceased loved ones, posing the following offensive rhetorical questions to the Facebook community and calling the Matus family attorney, Christian Contreras, a "bad" person:[21]



(1)     Did they demand that their family members not commit suicide or consume drugs while they were in custody?

(2)     Did they ever demand that their family members not commit crimes in the first place?

(3)     Did their parents ever demand they take responsibility for their own actions?

(4)     Do they ever think they played a huge part in the situation they find themselves in, other than the personal actions of their deceased loved one?

---

[21] Notably, SHERIFF BIANCO deleted the post thereafter.  SHERIFF BIANCO did this despite the post being highly relevant and material to Plaintiffs' supervisorial claims against him. This is textbook definition of spoliation.  Courts generally agree that the duty to preserve is triggered as soon as a potential claim is identified. *Apple Inc. v. Samsung Electronics Co., Ltd.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) ("duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation"); *Colonies Partners, L.P. v. County of San Bernardino*, 2020 WL 1496444, at *6-7 (C.D. Cal. 2020), report and recommendation adopted, 2020 WL 1491339 (C.D. Cal. 2020).  Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." *Kearney v. Foley & Lardner*, LLP, 590 F.3d 638, 649 (9th Cir.2009); *see also Leon v. IDX Systems Corp.*, 464 F.3d 951, 959, (9th Cir. 2006) ("A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'").

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

98.     SHERIFF BIANCO also blames the inmates themselves: "There are inmates that purposely get arrested just to smuggle drugs into jail. It is either for money, money on the outside, money or favor on the inside […] It's part of that culture of power inside the jails, and drugs are a part of it." [22]

99.     In response to the Department of Justice's recent announcement about its decision to investigate the patterns and practices existing within the COUNTY Jails, SHERIFF BIANCO expressed the following indifference towards pretrial detainees dying at alarming rates within his COUNTY Jails: "Of course I'm not happy, this is going to waste our time.  Every single one of these inmate deaths was out of anyone's control.  The fact of the matter is that they just happened to be in our custody."[23]

100.    Interestingly, SHERIFF BIANCO has taken this hardline (and insulting) position when asked about fentanyl overdoes in his jails.  Yet, upon information and belief, SHERIFF BIANCO is currently being investigated by the Federal Bureau of Investigation ("FBI") for his interference with a murder investigation arising from two fentanyl overdoses in the City of Riverside which occurred on February 21, 2022 before many of the fentanyl overdoes in COUNTY Jails.

101.    On February 21, 2022, 22-year-old Sierra Riane Rangel and 21-year-old Arrena Marie Mariotti died from fentanyl overdoses.[24]

102.    On February 24, 2022, murder charges were filed against Peter Luis Mera Garcia.[25]  Upon information and belief, Peter Luis Mera Garcia is the son of a

---

[22] *See* "California Jails Are Trying to Keep Fentanyl Out, But Inmates Are Still Dying. In Riverside County, Fentanyl is Blamed in 38% of In-custody Deaths So Far This Year," (Mercury News, September 26, 2022), available at: https://www.mercurynews.com/2022/09/26/southern-california-jails-trying-to-keep-fentanyl-out-but-inmates-are-still-dying/

[23] *See* "Kudos to Bonta for Investigating the Sheriff. Let's Hope He Moves Quickly" (The Desert Sun, March 5, 2023), available at https://www.desertsun.com/story/opinion/editorials/2023/03/05/kudos-to-bonta-for-investigating-riverside-county-sheriffs-department/69967829007/

[24] *See* "Man Charged with Murder After 2 Riverside Woman Died from Fentanyl Overdoses," (The Press-Enterprise, April 28, 2022), available at https://www.pressenterprise.com/2022/04/28/man-charged-with-murder-after-2-riverside-women-died-from-fentanyl-overdoses/

[25] *Id.*

senior level deputy at RIVERSIDE COUNTY SHERIFF'S DEPARTMENT. Notably, the criminal case received wide public attention as this was the first time in the COUNTY OF RIVERSIDE that a person had been charged with murder due to a fentanyl death.

103.   Upon information and belief, the Riverside Police Department ("RPD") Special Weapons and Tactics ("SWAT") was charged with executing the search warrant of suspect Peter Luis Mera Garcia's home.

104.   Upon information and belief, suspect Peter Mera Garcia lived with his parents, including his father who was a senior level deputy employed by the RIVERSIDE COUNTY SHERIFF'S DEPARTMENT.

105.   Upon information and belief, Former RPD Sergeant, Frank Hoyos, was one of the SWAT Team members assigned to execute the search warrant.

106.   Upon information and belief, prior to the execution of the search warrant, RPD Chief of Police Larry Gonzalez was called by SHERIFF BIANCO for a favor.  SHERIFF BIANCO asked Chief Gonzalez to provide him with the name of the RCSD senior level deputy.

107.   Upon information and belief, RPD Chief Gonzalez proceeded to call RPD Sergeant Jimmy Simmons, who had no involvement with the investigation of this double homicide. RPD Chief Gonzalez informed Sgt. Simmons that he was calling him because SHERIFF BIANCO wanted to know the name of his deputy whose son had been booked.  RPD Chief Gonzalez tasked Sgt. Simmons with the assignment of finding out the name for SHERIFF BIANCO.

108.   Upon information and belief, RPD Sgt. Simmons secured the name of the RCSD senior deputy and relayed the name to RPD Chief Gonzalez.

109.   Upon information and belief RPD Chief Gonzalez then relayed the name to SHERIFF BIANCO.

110.   Upon information and belief, SHERIFF BIANCO then alerted his senior level deputy that the RPD SWAT Team would be executing the search warrant on a

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

specific date and time and looking for very specific evidence in his home.

111.   Upon information and belief, the RCSD Senior Level Deputy convened with his son, suspect Peter Luis Mera Garcia, and together they ensured that when the RPD SWAT Team arrived at their home, they would find zero traces of a crime.

112.   Upon information and belief, when the RPD SWAT Team executed the search warrant during the early morning hours, the SWAT Team was greeted by the RCSD Senior Level Deputy who welcomed the SWAT Team into his home.  Indeed, no evidence of a crime was found.

113.   Clearly, SHERIFF BIANCO is personally responsible for the fentanyl crisis in RIVERSIDE COUNTY and has intentionally refused to make adequate measures within his jail to prevent individuals from dying from fentanyl.

## VII.

## PUNITIVE/EXEMPLARY DAMAGES ALLEGATIONS

**(Against individual Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, MARTIN TOCHTROP, and DOES 1-10)**

114.   Each Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice.

115.   Long before Ruben Guzman's death, Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, MARTIN TOCHTROP knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the COUNTY Jails.

116.   Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, MARTIN TOCHTROP were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the long history of in-custody deaths; the record-breaking amount of fentanyl overdoses throughout all COUNTY Jails; inmate-on-inmate violence; the federal class action *Quinton Gray, et al. v. County of Riverside,* case number 13-0444 VAP (OPx) (C.D. Cal.) targeting Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT's custody and

1  medical staff's deliberate indifference towards the safety and protection of inmates;

2  the warnings from the neutrally-selected experts regarding failures amounting to

3  constitutional violations; a Consent Decree directing Defendant RIVERSIDE

4  COUNTY SHERIFF's DEPARTMENT to implement a Remedial Plan to meet the

5  minimum level of health care necessary to fulfill its obligations under the Eighth and

6  Fourteenth Amendments; and through a Settlement Agreement which the COUNTY

7  voluntarily entered into requiring that Defendant RIVERSIDE COUNTY

8  SHERIFF'S DEPARTMENT  remedy all of the deficiencies in healthcare and

9  disability accommodations alleged in the *Gray* class action complaint.

10  117.  Despite this long history of complete disregard to inmate safety and

11  protection, Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES

12  KRACHMER, and MARTIN TOCHTROP have deliberately failed to take even

13  modest actions to prevent in-custody deaths at the COUNTY Jails which have for a

14  very long time been infested with endemic, ongoing and unabated risks of injury or

15  death to inmates.

16  118.  The Defendant officers, and each of them, acted with malice and

17  oppression and with a conscious disregard for Plaintiffs' rights, making the individual

18  defendants, including DOES 1-10, liable for punitive damages.

19  **VIII.**

20  **<u>FIRST CAUSE OF ACTION</u>**

21  **Failure to Protect from Harm,**

22  **Violation of the Fourteenth Amendment to the United States Constitution**

23  **(Survival Action – 42 U.S.C. § 1983)**

24  **By Plaintiff ESTATE OF RUBEN GUZMAN As Against DOES 1 through 10**

25  119.  Plaintiffs reallege and incorporate herein by reference each of the

26  preceding paragraphs of this complaint, and any subsequent paragraphs.

27  120.  By the actions and omissions described above, Defendants DOES 1

28  through 10, which included the RCSD custody personnel and the CHC medical

39

personnel, acting under the color of state law in their individual capacities, deprived decedent Ruben Guzman of the right to have his safety and life protected while in the custody of Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT as secured by the Fourteenth Amendment, by subjecting him, or through their deliberate indifference, allowing others to subject him, to a deprivation of these rights to be protected, proximately leading to him being violently asphyxiated and face blunt force trauma.

121.   "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989). Indeed, detainees in jails and prisons are "restricted in their ability to fend for themselves" and are, therefore, far more vulnerable than the general population. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). It is long settled that "prison officials have a duty … to protect prisoners from violence at the hands of other prisoners" because corrections officers have "stripped [the inmates] of virtually every means of self-protection and foreclosed their access to outside aid." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks omitted). The risk of inmate-on-inmate violence in the prison setting is well known.  Custodial staff, including deputies, lieutenants, sergeants, and correctional officers are not permitted to "bury their heads in the sand" and ignore these obvious risks to the inmate populations that they have an affirmative duty to protect. *See Walton v. Dawson*, 752 F.3d 1109, 1119 (8th Cir. 2014).

122.   Defendants DOES 1 through 10, which included the RCSD custody personnel and the CHC medical personnel, knew or had reason to know that housing decedent Ruben Guzman in the holding cell with a lack of supervision posed a substantial risk of serious harm to Ruben Guzman, in view of the multitude of factors, including, but not limited to, the fact that Ruben Guzman was a high-risk inmate.

123.   At the time decedent Ruben Guzman was asphyxiated and beaten to the point of death, Defendants DOES 1 through 10, which included the RCSD custody personnel and CHC medical personnel, were responsible for conducting proper cell checks, supervising inmates, and were responsible for protecting inmates from inmate-on-inmate violence.

124.   By the actions and omissions described above, Defendants DOES 1 through 10 violated 42 U.S.C. § 1983, depriving decedent Ruben Guzman of the right to be protected from violence at the hands of other inmates while in custody, as well as the right to one's liberty in bodily integrity, as secured by the Fourteenth Amendment.

125.   The listed Defendants' failure to intervene, prevent, or stop the constitutional violations by others, when Defendants were in a position to so intervene when such violations were occurring, also renders such Defendant(s) liable for these violations.

126.   Defendants subjected decedent Ruben Guzman to their wrongful conduct, depriving Ruben Guzman of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Ruben Guzman would be violated by their acts and/or omissions.

127.   As a proximate result of the foregoing wrongful acts and/or omissions, Ruben Guzman sustained injuries and damages, all of which resulted in his death. Plaintiff ESTATE OF RUBEN GUZMAN is therefore entitled to general and compensatory damages in an amount to be proven at trial.

128.   In committing the acts alleged above, Defendants DOES 1 through 10, acted maliciously and/or were guilty of a wanton and reckless disregard for the rights, safety, and emotional well-being of decedent Ruben Guzman, and by reason thereof, Plaintiff ESTATE OF RUBEN GUZMAN is entitled to punitive damages and penalties allowable under 42 U.S.C. § 1983, California Code of Civil Procedure §§ 377.20 *et seq*, and other state and federal law against these individual Defendants.

129.   Defendants COUNTY, RCSD and DOES 1 through 10 were on notice that their deficient policies, procedures, and practices alleged herein created substantial risk of serious harm to an inmate in decedent Ruben Guzman's position.

130.   Each Defendant could have taken action to prevent unnecessary harm to decedent Ruben Guzman but refused or failed to do so.

131.   By policy, procedure, and practice, Defendants COUNTY, RCSD and DOES 1 through 10 deliberately disregarded the hazards and risks posed to persons incarcerated at the JBDC, as alleged above.  Defendants failed to take any reasonable steps to mitigate the obvious and well-known risks of harm that was attendant to housing decedent Ruben Guzman at JBDC.

132.   Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, MARTIN TOCHTROP and DOES 8 through 10 also knew that deputies routinely failed to conduct required welfare and safety checks at the COUNTY Jails, including JBDC, and failed to take sufficient actions to correct this problem and ensure that necessary checks were performed.

133.   Defendant SHERIFF BIANCO failed to take corrective action, discipline, or remove the command staff at the COUNTY Jails, including JBDC, who, upon information and belief, directed the deputies to falsify safety check logs and violate the COUNTY's safety check policies. Defendant SHERIFF BIANCO ratified their actions, and the practices used under his watch.

134.   Defendants COUNTY, RCSD and DOES 1 through 10 were on notice that their policies, procedures, and practices for monitoring inmates at the COUNTY Jails, including JBDC, were inadequate and gave rise to a substantial risk of serious harm.

135.   Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, MARTIN TOCHTROP and DOES 8 through 10 failed to properly train and supervise RCSD custody and medical staff regarding policies,

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

procedures, and practices necessary for the protection of inmates from risks and hazards existing within the COUNTY Jails, including JBDC.

136.   Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, MARTIN TOCHTROP and DOES 8 through 10's failure to correct their policies, procedures, and practices despite notice of significant and dangerous problems evidences deliberate indifference to the inmates in their care.

137.   Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, MARTIN TOCHTROP and DOES 8 through 10 ratified Defendants DOES's actions and inactions amounting to constitutional violations.

138.   Defendants DOES 1 through 10's failure to conduct the required safety check of decedent Ruben Guzman's holding unit on the date of his death evidences deliberate indifference to the risk of harm to decedent Ruben Guzman.

139.   Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, MARTIN TOCHTROP and DOES 8 through 10 ratified Defendants DOES's failure to conduct safety checks and falsification of logs.

140.   As a direct and proximate result of Defendants' conduct, the civil rights of Ruben Guzman, as protected by the Fourteenth Amendment of the United States Constitution were violated.  Further, decedent Ruben Guzman experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

141.   Defendants subjected decedent Ruben Guzman to their wrongful conduct, depriving decedent Ruben Guzman of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Ruben Guzman and others would be violated by their acts and/or omissions.

142.   As a direct and proximate result of Defendants' acts and/or omissions as set forth above, decedent Ruben Guzman, through Plaintiffs herein, sustained injuries and damages.

143.   The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY.

144.   Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## IX.

## SECOND CAUSE OF ACTION

### Failure to Provide Medical Care,

### Violation of the Fourteenth Amendment to the United States Constitution

### (Survival Action – 42 U.S.C. § 1983)

### By Plaintiff ESTATE OF RUBEN GUZMAN As Against DOES 1 through 10

145.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

146.   By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, violated 42 U.S.C. § 1983, depriving decedent Ruben Guzman through Plaintiffs herein, of the following clearly established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to the United States Constitution: Decedent's right to be free from deliberate indifference to Ruben Guzman's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments.

147.   By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, including but not limited to their failure to provide decedent Ruben Guzman with appropriate emergency medical care, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to provide emergency medical care and life saving care to persons in their custody,  constituted deliberate indifference to Ruben Guzman's serious medical needs, health, and safety.

148.   As a direct and proximate result of Defendants' conduct, the civil rights of Ruben Guzman, as protected by the Fourteenth Amendment of the United States Constitution were violated.  Further, decedent Ruben Guzman experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

149.   Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

150.   As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiff herein, sustained injuries and damages.

151.   The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY.

152.   Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## X.

### THIRD CAUSE OF ACTION

**Deprivation of the Right to Familial Relationship with Decedent,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(42 U.S.C. § 1983)**

**By Plaintiff Ruben Guzman Sr.**

**As Against DOES 1 through 10**

153.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

154.   The aforementioned acts and/or omissions of Defendants DOES 1 through 10 in being deliberately indifferent to decedent Ruben Guzman's protection, safety, and serious medical needs, violating decedent Ruben Guzman's constitutional

1   rights, and their failure to train, supervise, and/or take other appropriate measures to
2   prevent the acts and/or omissions that caused the untimely and wrongful death of
3   Ruben Guzman deprived Plaintiff RUBEN GUZMAN, SR. of his liberty interests in
4   the parent-child relationship in violation of his substantive due process rights as
5   defined by the Fourteenth Amendments of the Constitution.

6   155.   All of the acts of Defendants DOES 1 through 10 and the persons
7   involved were done under color of state law.

8   156.   The acts and omissions of each Defendant deprived Plaintiff RUBEN
9   GUZMAN, SR. of rights, privileges, and immunities secured by the Constitution and
10   laws of the United States, including but not limited to the Fourteenth Amendment by,
11   among other things, depriving Plaintiff of his rights to a parent-child relationship with
12   decedent Ruben Guzman without due process of law by their deliberate indifference
13   in denying Ruben Guzman protection and safety while incarcerated at JBDC and
14   access to medical care while suffering a medical emergency at JBDC.

15   157.   Defendants DOES 1 through 10 and the other involved agents and
16   employees acted pursuant to expressly adopted official policies or longstanding
17   practices or customs of the COUNTY and RCSD. These include policies and
18   longstanding practices or customs of failing to provide persons in pretrial custody
19   who are experiencing medical emergencies access to medical care as stated above and
20   incorporated herein.

21   158.   In addition, the training policies of the COUNTY and RCSD were not
22   adequate to train its deputies, agents and employees to handle the usual and recurring
23   situations with which they must deal with, including but not limited to encounters
24   with individuals in pretrial custody who are experiencing medical emergencies. These
25   Defendants and each of them knew that its failure to adequately train its COUNTY
26   Jails custody and medical staff, including other agents and employees, to interact with
27   individuals suffering from medical emergencies made it highly predictable that its
28   custody and medical staff would engage in conduct that would deprive persons such

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

as decedent Ruben Guzman and thus Plaintiff RUBEN GUZMAN, SR. of their rights. These Defendants were thus deliberately indifferent to the obvious consequences of their failure to train their deputies, agents and employees adequately.

159.   Defendants COUNTY and RCSD's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Plaintiff RUBEN GUZMAN, SR. and decedent Ruben Guzman by each individual Defendant's official policies and/or longstanding practices or customs are so closely related to Ruben Guzman's injuries and death and thus the deprivation of the rights of Plaintiffs as to be the moving force causing those injuries.

160.   Defendant SHERIFF BIANCO, a final policymaker for the COUNTY and RCSD, ratified the actions and omissions of Defendants DOES 1 through 10, all of whom were custody and medical staff at the COUNTY Jails, including JBDC, in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.

161.   As a direct and proximate result of Defendants' conduct, the civil rights of Ruben Guzman, as protected by the Fourteenth Amendment of the United States Constitution were violated.  Further, decedent Ruben Guzman experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

162.   Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

163.   As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages.

164.     The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against Defendants COUNTY.

165.     Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## XI.

## FOURTH CAUSE OF ACTION

**Municipal Policies, Customs, Practices Causing Constitutional Violations**

**(*Monell* - 42 U.S.C. § 1983)**

**By Plaintiff ESTATE OF RUBEN GUZMAN As Against Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT**

166.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

167.     The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY and RCSD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants COUNTY and RCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant COUNTY and RCSD:

a.     Selecting, retaining and assigning deputies to their jails who exhibit deliberate indifference and reckless disregard for the safety, security and constitutional and statutory rights of detainees, arrestees and inmates who exhibit vulnerabilities due to their status;

b.     Subjecting persons in their jails to violence perpetrated by other detainees, arrestees or inmates;

c.     Failing to take adequate security measures to protect detainees, arrestees and inmates from unnecessary harm, including but not limited to, the following:

i.     separation of detainees and arrestees from potentially violent or dangerous inmates;

ii.     use of security cameras to monitor violence within jail cells;

iii.     training deputies to monitor detainees and inmates and immediately respond to acts of violence or threats of violence;

d.     Failing to properly classify, house, and monitor vulnerable detainees, arrestees and inmates;

e.     Failing to properly classify, house, and monitor violent detainees, arrestees and inmates;

f.     To allow and encourage deputies doing regular cell checks on inmates, including in safety cells, to fail to document their actual observations of the inmate's condition and status, in violation of the COUNTY OF RIVERSIDE and RCSD's written policies and state law;

g.     Ratifying wrongful conduct by RCSD custody personnel and CHC medical personnel which result in serious injuries and death to inmates in RCSD custody, civil litigation judgments and settlements by failing to implement corrective action to prevent repetition of the wrongful conduct;

h.     Failing to discipline, investigate and take corrective actions against RCSD custody personnel and CHC medical personnel, including, but not limited to, showing grave deliberate indifference to the protection and safety of vulnerable inmates;

i.     Employing and retraining RCSD custodial and medical/mental health staff who knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating inmates and being deliberately indifferent to the rights of inmates;

j.     To deny pretrial detainees and other inmates access to timely, appropriate, competent, and necessary care for serious medical needs,

1    requiring such inmates in crisis to remain untreated in jail instead of

2    providing for their emergency medical needs;

3    k.    To allow and encourage deputies doing regular cell checks on inmates,

4    including in safety cells, to fail to document their actual observations of

5    the inmate's condition and status, in violation of the County of

6    Riverside's written policies and state law;

7    l.    To allow and encourage inadequate and incompetent medical care for

8    jail inmates and arrestees;

9    m.    To hire, retain and contract for obviously inadequate medical care for

10    jail inmates and arrestees, including creating financial incentives for

11    custodial and medical personnel not to send inmates with emergency

12    medical needs to a hospital;

13    n.    To allow, encourage, and require medical staff, including licensed

14    vocational nurses and registered nurses, to work outside their legal scope

15    of practice and without appropriate supervision;

16    o.    To fail to train custody staff that medical staff, including licensed

17    vocational nurses, are not competent to assess or decide inmates'

18    medical conditions, medical needs, or whether the inmate should be

19    permitted to remain in the jail versus being sent to a hospital;

20    p.    To allow, encourage, and require unlicensed, incompetent, inadequately

21    trained and/or inadequately supervised staff to assess inmates' medical

22    condition, needs, and treatment, including to decide whether or not to

23    provide inmates with necessary emergency care and hospitalization;

24    q.    To fail to institute, require, and enforce proper and adequate training,

25    supervision, policies, and procedures concerning handling persons in

26    medical crisis;

27    r.    To cover up violations of constitutional rights by any or all of the

28    following:

     i.      By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical care at the jail;

     ii.     By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by custodial and medical personnel;

     iii.    By turning a blind eye to custodial and medical personnel who direct, aid, and/or assist with the distribution of hazards, including illicit drugs, into the Riverside County jails; and

     iv.    By allowing, tolerating, and/or encouraging custodial and medical personnel to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

s.     To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers, RCSD personnel, custodial personnel and medical personnel at the jail whereby an officer or member of the RCSD, or medical staff does not provide adverse information against a fellow officer, or member of the RCSD or the medical staff;

t.     To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (j) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

168.    The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other officers employed by or acting on behalf of the COUNTY and RCSD, on information and belief, were pursuant to the following

customs, policies, practices, and/or procedures of the COUNTY and the RCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for the COUNTY and RCSD, including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER and MARTIN TOCHTROP:

a. To fail to properly and adequately hire, train, supervise, and monitor custodial and medical personnel at the jails;

b. To fail to use appropriate and generally accepted law enforcement procedures for handling persons in medical crisis;

c. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

d. To cover up violations of constitutional rights by any or all of the following:

    i. By failing to properly investigate and/or evaluate complaints or incidents of handling of persons in medical crisis;

    ii. By ignoring and/or failing to properly and adequately investigate and/or discipline unconstitutional or unlawful law enforcement activity; and

    iii. By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

e. To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

f.   To allow, tolerate, and/or encourage a "code of silence" among custody, medical and mental health staff at the COUNTY jails whereby custody, medical and mental health staff does not provide adverse information against one another;

g.   To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (g) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

169.   Defendants COUNTY and RCSD, through their employees and agents, and through their policy-making supervisors, SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, MARTIN TOCHTROP and DOES 8 through 10, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants DOES 1 through 10, and other COUNTY and RCSD personnel, with deliberate indifference to the constitutional rights of decedent Ruben Guzman, Plaintiffs and others in similar positions, as described above, and therefore, those rights thereby violated.

170.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other RCSD custody and medical staff, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and RCSD, including Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, MARTIN TOCHTROP and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to the authorized policymakers within the COUNTY and RCSD, and that such policymakers have direct knowledge of the fact that the death of Ruben Guzman was the result of deliberate indifference to his rights to be protected and safe while in the custody of the COUNTY/RCSD, and his rights to have access to medical care when

suffering a medical emergency.  Notwithstanding this knowledge, the authorized policymakers within the COUNTY and RCSD have approved of the conduct and decisions of Defendants DOES 1 through 10 in this matter and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Ruben Guzman. By so doing, the authorized policymakers within the COUNTY and RCSD have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, MARTIN TOCHTROP and DOES 8 through 10, and other policy-making officers for the COUNTY and RCSD were and are aware of a pattern of misconduct and injury caused by COUNTY Jails custody and medical staff similar to the conduct of Defendants described herein, but failed to discipline culpable custody and medical staff and failed to institute new procedures and policy within the COUNTY and RCSD.

171.   The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY and RCSD were a moving force and/or a proximate cause of the deprivations of decedent Ruben Guzman's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983. Defendants subjected decedent Ruben Guzman to their wrongful conduct, depriving decedent Ruben Guzman of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Ruben Guzman, Plaintiffs and others would be violated by their acts and/or omissions.

172.   On information and belief, the COUNTY Jails, including JBDC, were overcrowded at the time decedent Ruben Guzman was brutally beaten, which

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

contributed to the pressure to place Ruben Guzman in a holding cell where unknown inmates and custody staff could prey on him. Plaintiffs allege, on information and belief, that conditions resulting from overcrowding at the COUNTY Jails caused or contributed to the death of Ruben Guzman. Overcrowding in the COUNTY Jails has led to the negligent, improper, and unconstitutional housing of inmates in RCSD custody, including JBDC, and including Ruben Guzman.

173.   On information and belief, the COUNTY Jails, including JBDC, were understaffed at the time decedent Ruben Guzman was brutally beaten, which contributed to RCSD custody personnel not properly and timely conducting proper welfare checks, not properly supervising and monitoring inmates, and not properly monitoring surveillance cameras installed to keep watch of the overcrowded JBDC facility. Plaintiffs allege, on information and belief, that conditions resulting from this understaffing at the COUNTY Jails caused or contributed to the death of Ruben Guzman.  Understaffing in the COUNTY Jails has led to the negligent, improper, and unconstitutional supervision of inmates in RCSD custody, including JBDC, and including Ruben Guzman.

174.   Defendants DOES 1 through 10 failed to ensure that decedent Ruben Guzman was properly and appropriately assessed and classified prior to placing him in a holding cell.

175.   The Defendants' actions and omissions and the classification and housing of decedent Ruben Guzman was contrary to generally accepted custodial classification and housing practices, causing the brutal assault and asphyxiation of Ruben Guzman resulting in his death.

176.   Defendants DOES 1 through 10, each individually knew or reasonably should have known that his subordinates were violating clearly established law and/or RCSD policy and/or were acting negligently pertaining to the classification and housing of inmates by, inter alia, being deliberately indifferent to the record of past conduct of inmates before celling them with other inmates, being deliberately

1  indifferent to the mental health status of inmates before celling them with other

2  inmates, being deliberately indifferent to the fact that an inmate has been designated a

3  single-cell inmate, and/or being deliberately indifferent to threats and statements

4  made by inmates before celling them with the risk of exposure to other inmates, being

5  deliberately indifferent to inmates' status as dropouts from prison gangs, being

6  deliberately indifferent to inmates' status, and knew, should have known, or had

7  reason to know that their conduct would deprive decedent Ruben Guzman of his

8  constitutional rights to, inter alia, life and liberty, and each defendant failed to act to

9  prevent his subordinate from engaging in such conduct.

10       177.   As a direct and proximate result of the unconstitutional actions,

11  omissions, customs, policies, practices, and procedures of Defendants COUNTY and

12  RCSD, as described above, decedent Ruben Guzman suffered serious injuries and

13  death, Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against

14  Defendants COUNTY and RCSD.

**XII.**

**FIFTH CAUSE OF ACTION**

**Supervisory Liability Causing Constitutional Violations,**

**(Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983)**

**By Plaintiff ESTATE OF RUBEN GUZMAN As Against Defendants SHERIFF**

**CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, MARTIN**

**TOCHTROP and DOES 7 through 10**

22       178.   Plaintiffs reallege and incorporate herein by reference each of the

23  preceding paragraphs of this complaint, and any subsequent paragraphs.

24       179.   At all material times, SHERIFF BIANCO, DELGADO, KRACHMER,

25  TOCHTROP and DOES 8 through 10 had the duty and responsibility to

26  constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff,

27  and discipline the other Defendants employed by their respective agencies in this

28  matter, as well as all employees and agents of the COUNTY and RCSD.

180.   Defendants SHERIFF BIANCO, DELGADO, KRACHMER, TOCHTROP and DOES 8 through 10 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendants DOES 1 through 10, and other COUNTY and RCSD personnel, with deliberate indifference to Plaintiffs', decedent Ruben Guzman's, and others' constitutional rights, which were thereby violated as described above.

181.   As supervisors, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, TOCHTROP and DOES 8 through 10 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights to safety and protections while incarcerated at JBDC and the rights to the serious medical needs of decedent Ruben Guzman. Each of these supervising Defendants either directed his or her subordinates in conduct that violated Decedent's rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive decedent Ruben Guzman of rights, or knew his or her subordinates were engaging in acts likely to deprive decedent Ruben Guzman of rights and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate decedent Ruben Guzman's rights, and in fact did cause the violation of decedent Ruben Guzman's rights. (*See*, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of decedent Ruben Guzman's rights.

182.   The unconstitutional customs, policies, practices, and/or procedures of Defendants COUNTY and RCSD, as stated herein, were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendants COUNTY and RCSD, including Defendants SHERIFF BIANCO, DELGADO, KRACHMER,

TOCHTROP and DOES 8 through 10, respectively, with deliberate indifference to Plaintiff's, decedent Ruben Guzman's, and others' constitutional rights, which were thereby violated as described above.

183.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other COUNTY and RCSD personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and RCSD, including Defendants SHERIFF BIANCO, DELGADO, KRACHMER, TOCHTROP and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to Defendants SHERIFF BIANCO, DELGADO, KRACHMER, TOCHTROP and DOES 8 through 10 and that such Defendant-policymakers have direct knowledge of the fact that the death of decedent Ruben Guzman was not justified or necessary, but represented deliberate indifference to his rights to be protected and safe while in the COUNTY's custody and his rights to his serious medical needs, as set forth above. Notwithstanding this knowledge, on information and belief, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, TOCHTROP and DOES 8 through 10 have approved and ratified of the conduct and decisions of Defendants DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Ruben Guzman. By so doing, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, TOCHTROP and DOES 8 through 10 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF BIANCO, DELGADO, KRACHMER, TOCHTROP and DOES 8 through 10 and other policymaking officers for the COUNTY and RCSD were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY and RCSD custody, medical and mental health staff personnel similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

officers and employees and failed to institute new procedures and policy within the COUNTY and RCSD.

184.   The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants SHERIFF BIANCO, DELGADO, KRACHMER, TOCHTROP and DOES 8 through 10 were a moving force and/or a proximate cause of the deprivations of decedent Ruben Guzman's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

185.   Defendants subjected decedent Ruben Guzman to their wrongful conduct, depriving decedent Ruben Guzman of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Ruben Guzman and others would be violated by their acts and/or omissions.

186.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants SHERIFF BIANCO, DELGADO, KRACHMER, TOCHTROP and DOES 8 through 10 as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees.

**XIII.**

**<u>SIXTH CAUSE OF ACTION</u>**

**Negligence – Wrongful Death**

**Plaintiff RUBEN GUZMAN, SR. As Against All Defendants**

187.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

188.   At all times, Defendants DOES 1 through 10 owed Plaintiff and decedent Ruben Guzman the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

189.   At all times, these Defendants owed Plaintiff and decedent Ruben Guzman the duty to act with reasonable care.

190.   These general duties of reasonable care and due care owed to Plaintiff and decedent Ruben Guzman by these Defendants include but are not limited to the following specific obligations:

    a.   To provide safe and appropriate RCSD custody at JBDC for decedent Ruben Guzman, including reasonable classification, monitoring, and housing, and ensuring proper cell checks, supervision, and monitoring;

    b.   To obey federal law, Supreme Court and Ninth Circuit precedent, and Court Orders for the care and safety of inmates, such as decedent Ruben Guzman;

    c.   To use generally accepted prison, custodial, institutional, law enforcement, and other inmate-safety-ensuring procedures that are reasonable and appropriate for decedent Ruben Guzman's status;

    d.   To summon, or transport Decedent to, necessary and appropriate emergency medical care;

    e.   To refrain from unreasonably creating danger or increasing Decedent's risk of harm;

    f.   To use generally accepted law enforcement procedures and tactics that are reasonable and appropriate for Decedent's status as a person in medical crisis with serious medical needs;

    g.   To conduct state mandated safety and welfare checks of inmates in the custody of the COUNTY Jails;

    h.   To refrain from abusing their authority granted them by law; and

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

i.    To refrain from violating Plaintiff's and Decedent's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

191.    By the acts and omissions set forth more fully in the paragraphs above, Defendants acted negligently and breached their duty of due care owed to decedent Ruben Guzman, which foreseeably resulted in the death of Ruben Guzman.

192.    Defendants, through their acts and omissions, breached the aforementioned duties owed to decedent Ruben Guzman, and such breach proximately led to the brutal and violent beating and killing of Ruben Guzman. Among other reasons, those who asphyxiated and attacked Ruben Guzman clearly were afforded ample opportunity by Defendants 1 through 5 to commit the violent attack because, as is set forth infra, decedent Ruben Guzman was found unresponsive in the holding cell after a substantial amount of time had lapsed since the violent attack and despite obvious signs that Ruben Guzman was being beaten, assaulted and asphyxiated in his cell for an appreciable amount of time.  Additionally, Ruben Guzman was acutely aware of the violence that could and eventually would be undone onto him, expressing, upon information and belief, grave concern for his safety to the point of efforts to get himself moved to a safe location.

193.    On information and belief, Defendants DOES 1 through 10, all of which were custodial and mental health staff at the COUNTY Jails, and specifically the JBDC, acted with deliberate indifference and/or negligence by failing to properly supervise decedent Ruben Guzman, failing to prevent decedent Ruben Guzman from being attacked by others, and failing to conduct proper and timely cell checks.

194.    Defendants SHERIFF BIANCO, DELGADO, KRACHMER, TOCHTROP and DOES 8 through 10 had a duty to hire, supervise, train, and retain employees and/or agents so that employees and/or agents refrained from the conduct and/or omissions alleged herein.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

195.   Defendants SHERIFF BIANCO, DELGADO, KRACHMER, TOCHTROP and DOES 8 through 10 breached this duty, causing the conduct alleged herein. Such breach constituted negligent hiring, supervision, training, and retention under the laws of the State of California.

196.   As a direct and proximate result of the failure of Defendants SHERIFF BIANCO, DELGADO, KRACHMER, TOCHTROP and DOES 8 through 10 to carry out their duty to hire, supervise, train, and retain employees and/or agents so that employees and/or agents refrained from the conduct and/or omissions alleged herein, Plaintiffs suffered injuries and damages as alleged herein.

197.   Defendants DOES 1 through 10, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs and decedent Ruben Guzman.

198.   Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

199.   As a direct and proximate result of these Defendants' negligence, Plaintiffs and decedent Ruben Guzman sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

**XIV.**

**SEVENTH CAUSE OF ACTION**

**Negligence – Medical Malpractice**

**Plaintiff ESTATE OF RUBEN GUZMAN As Against All Defendants**

200.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

201.   Decedent Ruben Guzman was under the care and treatment of Defendants DOES 1 through 10, all of whom were COUNTY medical staff assigned to the COUNTY Jails, including JBDC, who were required to examine, treat,

monitor, prescribe for and care for him and to provide him with medical attention when Ruben Guzman suffered a medical emergency. These Defendants, acting within the scope and course of their employment with Defendants COUNTY and RCSD, negligently, carelessly and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-up; abandoned; failed to classify, failed to appropriately diagnose and/or refer decedent Ruben Guzman to specialist medical care providers; negligently failed to provide physician care; and negligently, carelessly and unskillfully failed to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as Defendants for the benefit of their patient and dependent pre-trial detainee Ruben Guzman.

202.   Defendant supervisors and each of them failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing, to timely provide decedent Ruben Guzman emergency medical care, failed to provide adequate and competent staffing, and to ensure the care and treatment ordered for decedent Ruben Guzman was provided.

203.   As a direct and legal result of the aforesaid negligence and carelessness of Defendants' actions and omissions, Plaintiff sustained injuries and damages, and against these Defendants, and each of them, are entitled to compensatory damages and as applicable to this claim for Medical Negligence, to be proven at time of trial.

204.   Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

///

///

///

///

///

## XV.

## EIGHTH CAUSE OF ACTION

### Violation of California Government Code § 845.6

### Plaintiff ESTATE OF RUBEN GUZMAN As Against All Defendants

205.   Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

206.   Defendants DOES 1 through 10 was in need of immediate medical care and treatment, and each failed to take reasonable action to summon immediate medical care and treatment. Each such individual defendant, employed by and acting within the course and scope of his/her employment with Defendants COUNTY and RCSD, knowing and/or having reason to know of decedent Ruben Guzman's need for immediate medical care and treatment, failed to take reasonable action to summon such care and treatment in violation of California Government Code § 845.6.

207.   Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

208.   As a direct and proximate result of the aforementioned acts of these Defendants, decedent Ruben Guzman was injured as set forth above, and their losses entitle Plaintiff to all damages allowable under California law. Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorney fees under California law, including punitive damages against these individual Defendants.

## XVI.

## NINTH CAUSE OF ACTION

### Violation of California Civil Code §52.1 (Tom Bane Act)

### Plaintiff ESTATE OF RUBEN GUZMAN As Against All Defendants

209.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

210.   Plaintiff brings the claims in this cause of action as a survival claim permissible under California law, including Cal. Code of Civ. Proc. § 377.20 *et. seq*.

211.   By their acts, omissions, customs, and policies, Defendants, each acting in concert/conspiracy, as described above, while decedent Ruben Guzman was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Ruben Guzman's rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

   a.   The right to be free from objectively unreasonable treatment and deliberate indifference to Decedent's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

   b.   The right for the familial association to be free from government interference as secured by the Fourteenth Amendments to the United States Constitution;

   c.   The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

   d.   The right to emergency medical care as required by California Government Code §845.6.

212.   Defendants' violations of decedent Ruben Guzman's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.1[26] Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Ruben Guzman's rights as described

---

[26] *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); *see also, Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving M.H., supra.); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.*, 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

above, Defendants violated Ruben Guzman's rights by the following conduct constituting threat, intimidation, or coercion:

    a. Intentionally and/or with deliberate indifference, failing to protect decedent Ruben Guzman from violence, when it was also obvious that in doing so, Ruben Guzman's safety could be severely jeopardized as a violent attack which would kill him was foreseeable given him status as a high-risk inmate, and Plaintiff's rights would also be violated;

    b. Intentionally and/or with deliberate indifference, failing to provide appropriate housing, thereby subjecting decedent Ruben Guzman to needless and severe suffering, and exposing Ruben Guzman to violence, when it was also obvious that in doing so, Ruben Guzman would be victimized/assaulted/killed, and Plaintiff's rights would also be violated;

    c. Failing to protect decedent Ruben Guzman from physical harm or from being set up or violently attacked, despite the fact that Ruben Guzman had expressed fear for his own safety given his vulnerable physical state and status;

    d. With deliberate indifference to Decedent's serious medical needs, suffering, and risk of grave harm including death, depriving Decedent of necessary, life-saving care for his medical needs;

    e. With deliberate indifference to violent and predatory inmates that posed a risk to pretrial detainees, such as Decedent;

    f. Subjecting Decedent to ongoing violations of his rights to prompt care for his serious medical needs over days, causing immense and needless suffering, intimidation, coercion, and threats to his life and well-being;

    g. Deliberately contracting for and causing the provision of inadequate and incompetent medical health care to Riverside County jail detainees and inmates;

h.   Requiring medical staff to work outside their scope of practice, and conduct assessments, triage, and make medical and housing decisions for patients, including Decedent, they are not competent to make; and

i.   Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Decedent would be subjected to violence, threat, intimidation, coercion, and ongoing violations of rights as Decedent was here.

213.   The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of decedent Ruben Guzman's rights, or to any legitimate and lawful jail or law enforcement activity.

214.   Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

215.   Further, each Defendant violated decedent Ruben Guzman's rights reckless disregard and with the specific intent and purpose to deprive him of his enjoyment of those rights and of the interests protected by those rights.

216.   Defendant COUNTY is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

217.   As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of decedent Ruben Guzman's rights under the United States and California Constitutions, Plaintiff sustained injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, and civil penalties.

///

///

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

# XVII.

## TENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### Plaintiff RUBEN GUZMAN, SR. As Against Defendant SHERIFF CHAD BIANCO

218.  Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

219.  On September 16, 2022, The Press-Enterprise posted the article "Sheriff Explains How 13 Riverside County Inmates Died This Year" on Facebook with the following caption: "Less than an hour after the family of a man who died in jail publicly complained about a lack of information on his death and that of 12 other Riverside County inmates this year, Sheriff Chad Bianco explained how they died."

220.  Within fourteen hours of article being posted on Facebook, SHERIFF BIANCO went on to publicly shame and harass the families, including Plaintiffs, and their deceased loved ones, posing the following offensive rhetorical questions to the Facebook community and calling the Matus family attorney, Christian Contreras, a "bad" person:

     a. Did they demand that their family members not commit suicide or consume drugs while they were in custody?

     b. Did they ever demand that their family members not commit crimes in the first place?

     c. Did their parents ever demand they take responsibility for their own actions?

     d. Do they ever think they played a huge part in the situation they find themselves in, other than the personal actions of their deceased loved one?

221.  Defendant SHERIFF BIANCO posted these comments on the public form with the intent to harass and cause Plaintiff Ruben Guzman Sr. mental anguish

and turmoil.  He knew that given the public forum nature of the Facebook post that the family of Ruben Guzman, including the present Plaintiff, would read said harassing and offensive comments and that his actions would cause them great mental/psychological pain and anguish.  Notwithstanding, SHERIFF BIANCO deliberately engaged in this harassing and confrontational behavior.

222.   It was his intention to cause them great mental/psychological pain and anguish, and he did so through these actions.

223.   Plaintiff Ruben Guzman seeks compensatory damages incurred as a proximate result of Defendant SHERIFF BIANCO's deliberate and intentional misconduct.  Plaintiffs have suffered great emotional harm and will continue to suffer such harm in the future as a direct and proximate result of the aforementioned acts or omissions by Defendant SHERIFF BIANCO.

224.  The acts or omissions of Defendant SHERIFF CHAD BIANCO, as alleged above were willful, wanton, malicious, oppressive, and outrageous, and justify the awarding of exemplary and punitive damages against him.

225.   Defendant COUNTY is vicariously liable for the violations of state law and conduct of its officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

226.  As a direct and proximate result of these Defendant SHERIFF BIANCO's intentional conduct, Plaintiff Ruben Guzman Sr. sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

///

///

///

///

///

# XVIII.

## ELEVENTH CAUSE OF ACTION

### Declaratory Relief

### (28 U.S.C § 2201)

### Plaintiff As Against All Defendants

227.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

228.   There is an actual controversy between Plaintiffs and Defendants concerning their respective rights and duties in that Plaintiffs contend that the acts of Defendants, as described herein, are in violation of federal law, and Defendants contend in all aspects to the contrary.

229.   Plaintiffs are entitled to a legal declaration of their rights and Defendants' obligations under the applicable laws as alleged in this Complaint.

# XIX.

## TWELFTH CAUSE OF ACTION

### Battery

### Plaintiff Estate of Ruben Guzman As Against Defendant DOES 1-10

230.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

231.   On May 22, 2023, Defendants DOES 1-10, without cause or provocation, struck, hit, punched, kicked, asphyxiated and otherwise forcibly contacted decedent Ruben Guzman, causing him great injury which resulted in death, and constituting a battery under California law.

232.   As a direct and proximate result of Defendant DOES 1-10's battery, decedent Ruben Guzman sustained injuries and damages which resulted in his death.

///

///

///

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## XX.

## **REQUEST FOR RELIEF**

Wherefore, Plaintiffs respectfully requests that the Court enter a judgment as follows:

A.   Wrongful death of Ruben Guzman pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

B.   Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

C.   Ruben Guzman's coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq.;

D.   Violation of Ruben Guzman's constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq. and federal civil rights law;

E.   Ruben Guzman's loss of life, pursuant to federal civil rights law;

F.   Ruben Guzman's conscious pain, suffering, and disfigurement, pursuant to federal civil rights law;

G.   General Damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

H.   Non-Economic Damages, including wrongful death and survival damages, according to proof plus all further and proper relief;

I.   Punitive damages as to individual peace officer defendants;

J.   Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 & private attorney general doctrine);

K.   Penalties under the Tom Bane Act;

L.   Interest; and

M.   All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1    Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil

2    Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California

3    and/or federal law.

4

5    Dated: June 7, 2024                    GASTÉLUM LAW, APC

6                                           By: _____

7                                           Denisse O. Gastélum, Esq.

8                                           Attorneys for Plaintiffs,
                                            ESTATE OF RUBEN GUZMAN, by and through
9                                           successor in interest, Ruben Guzman Sr.; RUBEN
10                                          GUZMAN, SR., individually

11   Dated: June 7, 2024                    **LAW OFFICES OF CHRISTIAN CONTRERAS**
                                            **A PROFESSIONAL LAW CORPORATION**
12

13                                          By: _____

14                                          Christian Contreras, Esq.

15                                          Attorneys for Plaintiffs,
                                            ESTATE OF RUBEN GUZMAN, by and through
16                                          successor in interest, Ruben Guzman Sr.; RUBEN
                                            GUZMAN, SR., individually
17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## **DEMAND FOR JURY TRIAL**

Plaintiffs, ESTATE OF RUBEN GUZMAN, by and through successor in interest, Ruben Guzman Sr.; RUBEN GUZMAN, SR., individually; hereby make a demand for a jury trial in this action.

Dated: June 7, 2024                    GASTÉLUM LAW, APC

By: _____
Denisse O. Gastélum, Esq.
Attorneys for Plaintiffs,
ESTATE OF RUBEN GUZMAN, by and through successor in interest, Ruben Guzman Sr.; RUBEN GUZMAN, SR., individually


Dated: June 7, 2024            **LAW OFFICES OF CHRISTIAN CONTRERAS**
                    **A PROFESSIONAL LAW CORPORATION**

By: _____
Christian Contreras, Esq.
Attorneys for Plaintiffs,
ESTATE OF RUBEN GUZMAN, by and through successor in interest, Ruben Guzman Sr.; RUBEN GUZMAN, SR., individually